Marina Fineman, Esq. (SBN 193065)
**GERACI LAW FIRM**
90 Discovery
Irvine, CA 92618
Tele.: (949) 379-2600
Fax: (949) 379-2610
E-mail: m.fineman@geracillp.com

Attorneys for Sandra Cristobal

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

In re

David Stephens,

Debtor.

Case No. 24-13887-NB

Chapter 13

**REPLY TO DEBTOR'S OPPOSITION TO SANDRA CRISTOBAL'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY (UNLAWFUL DETAINER)**

Judge: Hon. Neil Bason
Date: July 30, 2024
Time: 10:00 a.m.
Place: 255 East Temple Street,
Los Angeles, CA 90012
Courtroom 1545

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Sandra Cristobal ("**Cristobal**"), hereby submits this reply (this "**Reply**") to the opposition [ECF No. 37] (the "**Opposition**") filed by debtor David Stephens, to Cristobal's *Motion For Relief From The Automatic Stay Or For Order Confirming That The Automatic Stay Does Not Apply (Unlawful Detainer)* [ECF No. 27] (the "**Motion**").[1]

## I. INTRODUCTION

Cristobal recently purchased the property located at 5851 Garth Ave, Los Angeles, California 90056 (the "**Property**"). The Property was initially sold on April 4, 2024, through a trustee sale (the "**Sale**"), to a third-party buyer, for $658,000. The Sale initiated by Sakhat Partnership, a junior lienholder. On May 16, 2024, Cristobal submitted the winning bid of $661,000, in accordance with the procedures of 2019 California Senate Bill No. 1079, subsequently codified in Cal. Civ. Code § 2924m and 2924h(c) ("**SB 1079**").[2] The debtor, David Stephens ("**Debtor**") filed this case (this "**Case**") on May 17, 2024 (the "**Petition Date**"). Cristobal recorded her trustee's deed upon sale (the "**TDUS**") on May 30, 2024– within 60 days of the Sale, as required by Cal. Civ. Code § 2924h(c) (all references to "**Section**" hereinafter refer to Cal. Civ. Code § 2924). Under Section 2924h(c), the date of the Sale "relates back" to April 4, 2024, even though Cristobal was not confirmed as the winning bidder until May 20, 2024. Under California law, the Sale is "deemed perfected as of 8 a.m." April 4, 2024; under Ninth Circuit law, the TDUS is valid. *See In re Bebensee-Wong v. Fannie Mae (In re Bebensee-Wong)*, 248 B.R. 820 (9th Cir. BAP 2000). Cristobal is the rightful owner of the Property.

Applying Section 2924h(c) in any way other than to find that the Sale date relates back to April 4, 2024, would be inconsistent with both the statutory language and legislative intent of the change made to the statute in 2021. In 2021, the newly enacted Section 2924m expanded the period of time before a trustee's sale becomes final in order to allow "eligible bidders" to bid on small qualifying residential properties. In order to ensure that the same sale finality protections for which Section 2924h(c) was originally enacted (i.e., to ensure that a trustee sale of a property subject to SB

[1] Any capitalized terms not defined herein shall have the meaning set forth in the Motion.
[2] All references herein to "**Section**" shall refer to Sections of CA Civil Code § 2924.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

1079 would also be deemed effective as of 8 a.m. on the day of the sale if the deed is recorded within 60 days of the sale), the Legislature added a new sentence into Section 2924h(c). The added sentence was intended to align with the language in Section 2924m(c)(2). Unfortunately, the Legislature made a clerical error by referencing the wrong subsection; it referenced Section 2924m(c)**(3)** instead of (c)**(2)**, as explained below. This small error caused big confusion, as debtors began to assert that they could force rescission of sales of properties subject to SB 1079 by filing for bankruptcy **after** the sales, but before the sales became final, e.g., **between 15 and 44 days after** the foreclosure sales.

**Fortunately, this typo was finally corrected last week, when Governor Newsome signed into law Assembly Bill 295 (AB 295).**[3] AB 295 corrects Section 2924h(c) by replacing the erroneous reference to Section 2924m(c)(3), with a reference to Section 2924m(c)(2), as the Legislature originally intended. This solidifies the original legislative intent for this provision: to ensure that all trustee sales, including those that close pursuant to the newly enacted SB 1079/Section 2924m, will relate back to 8 a.m. on the date of the sale if the deed is timely recorded. As such, the long line of cases following *Bebensee-Wong* apply to establish that the TDUS is valid.

Even if the Court does not find that the TDUS is valid under Section 2924m(c)(2), the Motion should nevertheless be granted because annulment of the stay is warranted for all of the reasons stated in the Motion and are not repeated here.

Relief from stay is also warranted because the Debtor has not provided any evidence to substantiate the premise of his Amended Plan [ECF No. 31]: he will obtain a refinancing loan sufficient to repay the $461,000 either to Sakhat Partnership or Cristobal (since Sakhat Partnership's claim was paid in full in April, after the Sale) plus reimburse Cristobal for her damages, including costs and expenses, and he will be able to afford to pay all living expense and the two mortgages on the Property. The Debtor has not provided a loan commitment letter or any evidence at all showing he has been approved for a refinancing loan, despite representations by his counsel for weeks now that this would be provided "soon". The Debtor also filed Amended Schedules [ECF Nos. 28, 29], in which he increased his income from $0 over the last couple of years and signed a declaration

[3] Attached hereto as **<u>Exhibit "1"</u>** is Assembly Bill No, 295, signed into law on July 18, 2024.

attesting to the fact that his income will soon increase to $100,000++. Yet, the Amended Schedules continue to show a shortfall in the income necessary to meet even the terms of the prior Sakhat Partnership loan, which will be even higher now given the increased interest rates and the amount the higher amount of money Debtor will need to borrow. To add to the fact distortion, the Debtor inflated the value of the Property—from $1,650,000 (original Schedules) to $1,820,600 (Amended Schedules)—without providing any persuasive or admissible evidence of the **$170,600 increase** in value. In fact, the information he attached to his Opposition arguably indicates that even $1,650,000 is too high an estimate. For these and other reasons, the chapter 13 trustee moved to dismiss this Case. Cristobal submits that there is sufficient legal and equitable basis to grant the Motion.

## II. ARGUMENT

### A. The Debtor's Post-Sale Bankruptcy Filing Did Not Invalidate The Sale.

#### 1. Newly Enacted AB 295 Confirms Legislators Intended 2021 Amendment To Section 2924h(c) To Extend the Relation-Back Provision to All SB 1079 Purchases By "Eligible Bidders".

AB 295 "makes a variety of technical and clean-up changes in California's foreclosure laws to resolve improper cross-references and other minor changes".[4] Among these is that the revised Section 2924h(c) (2024) now correctly refers to Section 2924m(c)(2) instead of to Section 2924m(c)(3), clarifying any confusion about whether this new relation back provision applies to all "eligible bidders" purchasing properties under SB 1079 (rather than just to bids by eligible tenant buyers). This one change moots the disagreement between the courts in *In re Hager* and *In re Ford* because it confirms the Legislature always intended the added relation back provision in 2924h(c) to apply to all sales to "eligible bidders" under SB 1079 (as the *In re Ford* court found), and not only to bids of representatives of eligible tenant buyers (as the *In re Hager* court held).

This understanding is consistent with the legislative purpose of Section 2924h(c). Section 2924h(c) was enacted to stop the "race to the courthouse" that took place between the winning bidder

[4] *See CONCURRENCE IN SENATE AMENDMENTS AB 295 (Lowenthal), As Amended June 13, 2024, 2/3 vote. Urgency, Assembly Floor Analysis, June 25, 2024*, attached hereto as **Exhibit "2"**; and found here: file:///C:/Users/m.fineman/Downloads/202320240AB295_Assembly%20Floor%20Analysis.pdf

4

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

at a trustee sale racing to record its deed, and the property owner racing to file for bankruptcy before the deed could be recorded. Section 2924h(c) established that "the trustee's sale shall be deemed final upon the acceptance of the last and highest bid and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 21 calendar days after the sale …". Cal. Civ. Code § 2924h(c). This stopped the race to the courthouse by establishing that a bankruptcy case could only stop a sale if it was filed **before** the sale. Because SB 1079 expanded the period of time before a sale is deemed final to allow eligible bidders to submit overbids, legislators added a new provision to Section 2924h(c), intending to extend this same relation back-rule to all SB 1079 sales:

> If an **eligible bidder** submits a written notice of intent to bid pursuant to **paragraph (3) of subdivision (c) of Section 2924m**, the trustee's sale shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale….

Cal. Civ. Code § 2924h(c) (2021) (emphasis added). However, the sentence contained a typo; instead of referencing "**paragraph (2)**" of subdivision (c) of Section 2924m, it erroneously referenced "**paragraph (3)**" of subdivision (c) of Section 2924m. Three years later, this error was finally fixed with the following edit contained in AB 295:

> If an **eligible bidder** submits a written notice of intent to bid pursuant to paragraph ~~(3)~~ **(2)** of subdivision (c) of Section 2924m, the trustee's sale shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale ….

Cal. Civ. Code § 2924h(c) (2024) (emphasis added).

AB 295 contains the following explanatory statement in its preamble explaining the change:

> Existing law specifies when a trustee's sale is deemed final and perfected, and provides that, if an eligible bidder submits a written notice of intent to bid pursuant to (1), as described below, the trustee's sale is deemed perfected as of 8 a.m. on the actual date of sale if a specified requirement is met.
>
> This bill would recast that provision to provide that the trustee's sale is deemed perfected as of 8 a.m. on the actual date of sale if a specified requirement is met if an eligible bidder submits a written notice of intent to bid under any of the provisions granting eligible bidders the rights and priorities to make bids on the property after the initial trustee sale described above. [5]

---

[5] *Se* **Exhibit "1"** at p. 2.

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

5

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

AB 295 sponsor United Trustees Association explained that:

> **AB 295 makes a variety of technical and clean-up changes in California's foreclosure laws to resolve improper cross-references** and other minor changes. Specifically, this bill seeks to make several changes to the post-trustee sale process enacted by SB 1079 (Skinner, 2020) and several other foreclosure-related statutes.[6]

This amendment (along with the legislative history of AB 295) leaves no doubt that Section 2924h(c) applies to all SB 1079 sales, e.g., the sale of the Property to Cristobal and her TDUS.

**2. The Court Should Apply Section 2924h(c) To Relate the Sale and TDUS Back To April 4, 2024.**

If this Court is not inclined to apply the version of 2924h(c) as amended b AB 295, it can still find that the TDUS relates back to April 4, 2024, by applying the accepted rules of statutory interpretation. In California, the rules governing statutory construction are well settled. The objective of statutory interpretation for courts is to "ascertain and effectuate legislative intent." *Nolan v. City of Anaheim*, 33 Cal. 4th 335, 340, 92 P.3d 350, 352 (2004).

> To determine legislative intent, we turn first to the words of the statute, giving them their usual and ordinary meaning. [Citations.] When the language of a statute is clear, we need go no further. **However, when the language is susceptible of more than one reasonable interpretation, we look to a variety of extrinsic aids, including the ostensible objects to be achieved, the evils to be remedied, the legislative history, public policy, contemporaneous administrative construction, and the statutory scheme of which the statute is a part.** [Citations.]

*Id.* (emphasis added); *see also, Monterossa v. Sup. Ct.*, 237 Cal.App.4th 747, 751-752 (2015) (citations omitted).

---

[6] *See ASSEMBLY COMMITTEE ON JUDICIARY, Ash Kalra, Chair, AB 295 (Lowenthal) – As Amended June 13, 2024*, for hearing June 25, 2024, attached hereto as **Exhibit "3"**, at p. 5 (emphasis added). "Clean-up to SB 1079 and AB 1837. In 2020, as one means of mitigating the trend towards increased corporate ownership of single-family homes in California, the Legislature enacted SB 1079 (Skinner) Chap. 202, Stats. 2020. SB 1079 created a process (now known in the real estate industry as the "SB 1079 process") through which three categories of eligible bidders—prospective owner-occupants; existing tenants living in the property; and designated entities, including nonprofit affordable housing providers, community land trusts, limited-equity housing cooperatives, and public entities—could acquire single-family homes by matching or exceeding bids placed at foreclosure auctions. In 2022, SB 1079 was updated by AB 1837 (Bonta) Chap. 642, Stats. 2022, to curb fraud, address identified implementation challenges, and increase the stock of affordable housing. **This bill resolves improper cross references and makes other clarifying changes the statutes as modified by those measures." (Emphasis added.)** *See also*, Ex. 1, at p. 3 ("This bill resolves improper cross references and makes other clarifying changes to those statutes.").

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

6

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Because Section 2924h(c) (2021) is internally inconsistent and therefore confusing, this Court must determine legislative intent of the new provision by looking to extrinsic aids. Section 2924h(c) was amended to add that: **[i]f an eligible bidder submits a written notice of intent to bid pursuant to paragraph (3) of subdivision (c) of Section 2924m**, the trustee's sale shall be deemed perfected … on the actual date of sale…." (emphasis added). The first part of the sentence expressly refers to an "intent to bid" by an "eligible bidder". An "eligible bidder" is defined to include all potential bidders, including "eligible tenant buyers" and "prospective owner-occupants". Civil Code § 2924m(a)(3).

However, "paragraph **(3)** of subdivision (c) of Section 2924m", discusses only "[t]he date upon which a **representative of all of the eligible tenant buyers** submits to the trustee **a bid** …". In other words, it does not correspond to the first part of this sentence. However, "paragraph **(2)** of subdivision (c) of Section 2924m" aligns perfectly with the first part of the sentence, as it refers to any "**eligible tenant buyer or eligible bidder** [that] submits to the trustee **either a bid pursuant to paragraph (3) or (4) or a nonbinding written notice of intent to place such a bid**…" Civil Code § 2924m(c)(2) and (3) (emphasis added). In other words, it is easy to conclude that the draft of Section 2924h(c) included a typo in referencing Section 2924m(c)(3) instead of Section 2924m(c)(2). Therefore, even before AB 295, the only application of the new provision added to Section 2924h(c), that made sense from a plain reading and policy perspective, was to apply it all eligible bidders and not just to representatives of eligible tenant buyers (as the court found in *In re Hager*).

The express correction to Section 2924h(c) under AB 295 is simply additional, and the most compelling, evidence that the **Legislature did not intend in 2021**: (1) to undo the pre 2021 amended version of Section 2924h(c) by eliminating the relation back period for all SB 1079 sales except by a "representative of a tenant buyer"; or (2) to overturn bankruptcy court case affirming the validity of trustee's deeds issued and recorded postpetition, when they related back to the prepetition sale date under Section 2924h(c).[7] **On the contrary, the intent was clear: to ensure that the Section**

[7] *See, e.g., In re Bebensee-Wong*, 248 B.R. at 823 (relation back effect of Civil Code § 2924h(c) operated to perfect the sale on the actual date of the sale notwithstanding the postpetition recordation of the deed and therefore did not violate

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

**2924h(c) relation back provision would extend to cover all SB 1079 sales, in order to not cause the kind of chaos and confusion that ultimately resulted from the incorrect reference to Section 2924m(c)(3) instead of to (c)(2)**. Because Cristobal recorded the TDUS within 60 days after the Sale, the Court should find that the TDUS is valid and enforceable. The court in *In re Hagar* got it wrong when it decided that Section 2924h(c) applies only to bids by tenant representatives because it did not examine Legislative intent or ensure that its holding was consistent with Section 2924m(c)(3), and other laws. The change to Section 2924hc(c) in AB 295 supports this conclusion.

Finally, if this Court chooses to read Section 2924h(c) (2021) literally as drafted, the Sale also qualifies for the relation-back provision because the 2021 statute requires that "an eligible bidder submits a written notice of intent to bid pursuant to paragraph (3) of subdivision (c) of Section 2924m"; in this case, two separate notices of intent to bid were submitted by tenant buyers.[8] Therefore, a plain reading of the statute also supports a finding that the Sale was perfected on April 4, 2024, pursuant to Section 2924h(c).

### B. The Plan is Not Feasible.

#### 1. There Is No Proof of a Financing Commitment to Refinance the Sakhat Loan and The Debtors Ability to Make Additional Loan Payments Is Uncertain.

Even if the Court decides that the TDUS is invalid, it should still grant the Motion. Among other reasons, the Plan is not feasible. The Debtor initially reported an income of $0 for the last few years. Suddenly, he asserts that he is going to start earning $100,000++ a year, within just a few months.[9] Also, Dana Douglas, Debtor's counsel, has repeatedly told the chapter 13 trustee, the Court and Cristobal and her counsel that the Debtor had been approved prepetition and is still approved for a refinancing of the Sakhat Partnership Loan of $461,000 plus additional sums, but has not provided a commitment letter or any other evidence to support these assertions.

Without a loan, the Debtor has no way forward, in or outside of bankruptcy. Sakhat

---

the stay); *In re Engles*, 193 B.R. 23, 27–28 (Bankr. S.D. Cal. 1996) (purpose of § 2924h(c) is to ensure that on facts such as these, a debtor cannot avoid a trustee's sale by filing a bankruptcy petition after the trustee's sale but prior to the date the trustee's deed on sale is recorded.). *Accord, In re Svacina*, 618 B.R. 852, 857–58 (Bankr. C.D. Cal. 2020).

[8] *See* Declaration of Sandra Cristobal filed in Support of the Motion [ECF No. 27-2] at Exhibit 6, May 28, 2024 letter from the Trustee to Cristobal, confirming that two Notices of Intent to Bid were received from tenants.

[9] *See Debtor's Opp. to Dismissal of Case* [ECF No. 32], filed on July 10, 2024, at pp. 2-3.

8

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Partnership's loan was paid in full in April 2024 after the Sale. The winning bidder at auction was reimbursed its $559,000 purchase price with Cristobal's $661,000 after her bid was accepted on May 20, 2024. If the Court denies the Motion, Cristobal will need to be reimbursed for the $661,000, plus the costs and expenses she has incurred because the Debtor filed this Case 42 days after the Sale, and after she submitted her bid. In order to reimburse Cristobal or pay off Sakhat Partnership if the Sale is rescinded, and to fund potential litigation, the Debtor will need to obtain a loan of at least approximately $550,000. The new loan will be an interest only loan, with a high interest rate and a short term. The Amended Schedules still show a deficiency in the expenses/income analysis, even at the lower monthly payment the Debtor paid to Sakhat Partnership, as shown in Schedule I. There is little sense in rescinding the Sale only to put the Debtor back into the same situation as he faced before the Sale, but now with potentially a higher loan payment and more debt. This will only lead to another foreclosure either by Sakhat Partnership or a new lender, if the Debtor finds one.

**2. The Debtor's Assertion That The Property Is Valued At $1,820,600 Is Inaccurate And Is Not Supported By Admissible Evidence**.

The Debtor's attempt to inflate his equity in the Property **by $170,600** is not based on any admissible or persuasive evidence; there is no appraisal or even a broker's opinion.[10] Moreover, the purported evidence does not support the Debtor's inflated valuation. In the Schedules the Debtor filed on June 10, 2024 [ECF No. 17], he listed the Property value as $1,650,000. A few weeks later, on July 8, 2024, he filed Amended Schedules [ECF Nos. 28, 29], asserting that the value had suddenly skyrocketed— **by $170,600—to $1,820,600**. This is especially surprising given the decline in home prices in this price range. In support of this new valuation, the Debtor a printout to the Opposition that he described as "competitive bids provided by a real estate professional." *See* Opposition at ¶ 3.b.(1). Notably, the exhibit expressly excludes a valuation of the Property. It also is

[10] The list of so-called comparable bids in Exhibit "A" to the Opposition that is intended to support a valuation of $1,820.600 is neither admissible nor accurate and it does not contain a valuation of the Property. Many courts have held that even a broker's price opinion- a "BPO"-will not be accepted as evidence of value because a broker does not qualify as a valuation expert and therefore cannot give expert testimony regarding the value of the property. A BPO is also a much less rigorous estimate of a property's market value than is an appraisal. In California, BPOs are generally not considered "appraisals" as California Business and Professions Code § 11302(b) defines the term "appraisal" to explicitly exclude opinions of value for real property made by licensed real estate brokers in connection with their brokerage activities. Exhibit A to the Opposition is not admissible and should be disregarded.

Main Document Page 10 of 50

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

not attached to anyone's declaration, so it is not properly authenticated. *See* Federal Rules of Bankruptcy Procedure, Rule 9017; Federal Rules of Evidence, Rule 901.

Moreover, even if it were admissible, Exhibit "A" to the Opposition does not support a finding that the Property is worth $1,820,600. Many of the homes listed on the Exhibit "A" are in fact not "comparable". Although they are of similar size, the homes that were sold for $800+/square foot are homes that were recently completely gutted and rebuilt/remodeled and have swimming pools (e.g., 6010 S. Garth Ave, 5877 S. Chariton Ave). There is no indication that the Debtor made these kinds of improvements to the Property. Even the homes listed at $700+/square foot, are in better condition and are smaller; smaller homes commonly yield a higher per square foot ration than larger homes. The actual valuation is in fact probably less than $1,650,000 because even $646/square foot is likely too high for a house of this size that has not been remodeled. To that point, Redfin, a website commonly referenced for current residential property values, suggests that the Property is worth approximately $1,560,372[11], while Zillow, another such website, estimates that the Property is worth approximately $1,316,200 (Exhibit 4).[12] For these and other reasons, the assertion that the Property is worth anything close to $1,820,600 must be disregarded both because it is inaccurate and there is no evidence to support it.

**C. Annulment of the Stay Is Warranted.**

Finally, Cristobal requests that the Court grant retroactive relief from stay for all of the reasons stated in the Motion.

## III. CONCLUSION

For the reasons set forth above, Cristobal respectfully requests that the Court grant the Motion.

Date: July 23, 2024

**GERACI LAW FIRM**
By: _/s/ Marina Fineman_
Marina Fineman, Esq.
Attorneys for Sandra Cristobal

---

[11] Attached hereto as **Exhibit "4"** is a screenshot of the Redfin website taken, on July 22, 2024, showing the Property's approximate valuation of $1,560,372. https://www.redfin.com/CA/Los-Angeles/5851-S-Garth-Ave-90056/home/6595746

[12] Attached hereto as **Exhibit "5"** is a screenshot of the Zillow website, taken on July 22, 2024, showing the Property's "Zestimate", or approximate valuation, at $1,316,200. https://www.zillow.com/homedetails/5851-S-Garth-Ave-Los-Angeles-CA-90056/20377170_zpid/

10

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

**Geraci Law Firm**
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

**EXHIBIT 1**

**ASSEMBLY BILL 295**

11

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

**Assembly Bill No. 295**

CHAPTER 142

An act to amend Sections 2924, 2924c, 2924h, 2924m, and 3273.10 of, and to add Section 2924.21 to, the Civil Code, relating to real property, and declaring the urgency thereof, to take effect immediately.

[Approved by Governor July 18, 2024. Filed with Secretary of State July 18, 2024.]

LEGISLATIVE COUNSEL'S DIGEST

AB 295, Lowenthal. Residential real property: foreclosure.

Existing law prescribes various requirements to be satisfied before the exercise of a power of sale under a mortgage or deed of trust and prescribes a procedure for the exercise of that power.

This bill would prohibit a person from contacting, soliciting, or initiating communication with an owner to claim the surplus funds from a foreclosure sale of the owner's residence before 90 days after the trustee's deed has been required.

In performing acts required by the provisions pertaining to the exercise of a power of sale under a mortgage or deed of trust, existing law provides that the trustee does not incur liability for specified errors and that the trustee is not subject to specified law.

This bill would add that a trustee does not incur liability and is not subject to that specified law when responding to requests for payoff or reinstatement information.

When some or all of the principal sum of an obligation secured by real property has become due prior to the maturity date by reason of default or other specified failure to pay and a power of sale is to be exercised, existing law authorizes a trustor or mortgagor, at any time prior to foreclosure, to pay to the beneficiary or mortgagee specified amounts, including specified amounts shown in the notice of default and reasonable costs and expenses that are actually incurred in enforcing the terms of the obligation, deed of trust, or mortgage, as specified. If the trustor or mortgagor cures the default pursuant to these provisions, existing law requires the beneficiary or mortgagee to execute and deliver to the trustee a notice of rescission, as specified. Existing law limits costs and expenses that may be charged pursuant to specified mortgage law to $50.

This bill would include reasonable costs and expenses that will be incurred as a direct result of the cure payment being tendered as part of the cure payment described above. This bill would include recording a notice of rescission as part of the costs and expenses that may be charged pursuant to specified mortgage law and raise the limit to $100.

Existing law specifies when a trustee's sale is deemed final and perfected, and provides that, if an eligible bidder submits a written notice of intent to bid pursuant to (1), as described below, the trustee's sale is deemed perfected as of 8 a.m. on the actual date of sale if a specified requirement is met.

This bill would recast that provision to provide that the trustee's sale is deemed perfected as of 8 a.m. on the actual date of sale if a specified requirement is met if an eligible bidder submits a written notice of intent to bid under any of the provisions granting eligible bidders the rights and priorities to make bids on the property after the initial trustee sale described above.

Existing law, until January 1, 2031, grants eligible tenant buyers, as defined, and other eligible bidders, as defined, certain rights and priorities to make bids on the property after the initial trustee sale. Existing law provides that a trustee's sale of property under a power of sale contained in a deed of trust or mortgage on specified real property until the earliest of, among other things, (1) the date upon which a representative of all of the eligible tenant buyers submits to the trustee a bid that meets specified requirements, including that the bid be limited to a single bid amount and not contain instructions for successive bid amounts; and (2) 45 days after the trustee's sale, except if an eligible bidder submits to the trustee a bid meeting specified requirements. Existing law requires prospective owner-occupants, as defined, eligible tenant buyers, and eligible bidders to submit specified affidavits or declarations regarding bidder eligibility under certain circumstances. Existing law authorizes the trustee to reasonably rely on these affidavits and declarations regarding bidder eligibility, and requires these affidavits or declarations of the winning bidder to be attached as an exhibit to the trustee's deed and recorded.

This bill would remove the requirement that the bid be limited to a single bid amount and not contain instructions for successive bid amounts from (1), as described above, and would add that requirement to (2), as described above. If the winning bidder is not required to submit an affidavit or declaration pursuant to the provisions described above, the bill would require the trustee to attach as an exhibit to the trustee's deed a statement that no affidavit or declaration is required by these provisions, and would provide that the lack of an affidavit or declaration shall not prevent the deed from being recorded and shall not invalidate the transfer of title pursuant to the trustee's deed.

Existing law requires, for trustee's sales where the winning bidder is an eligible bidder under the provisions described above, the trustee or an authorized agent to electronically send specified information to the Attorney General within 15 days of the sale being deemed final, including a copy of the trustee's deed, as recorded, as specified.

This bill would recast that provision to require the trustee to provide a copy of the trustee's deed as executed instead of as recorded.

Existing law, the COVID-19 Small Landlord and Homeowner Relief Act of 2020, requires a mortgage servicer to provide a specified written notice to a borrower if the mortgage servicer denies forbearance during the effective

time period that states the reasons for that denial if the borrower was both current on payments as of February 1, 2020, and is experiencing a financial hardship that prevents the borrower from making timely payments on the mortgage obligation due, directly or indirectly, to the COVID-19 emergency. The act defines various terms for these purposes. If a mortgage servicer denies a forbearance request, the act requires a specified declaration to include the written notice together with a statement as to whether forbearance was or was not subsequently provided.

This bill would clarify that the act requires that specified declaration to include that written notice if the mortgage servicer denied the forbearance request during the effective time period.

This bill would declare that it is to take effect immediately as an urgency statute.

*The people of the State of California do enact as follows:*

SECTION 1. Section 2924 of the Civil Code is amended to read:

2924. (a) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. If, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Financial Protection and Innovation, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

(B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C) A statement setting forth the nature of each breach actually known to the beneficiary and of the beneficiary’s election to sell or cause to be sold

the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

(D)  If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2)  Not less than three months shall elapse from the filing of the notice of default.

(3)  Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4)  Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to 5 days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5)  Whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within 5 business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f.

(6)  An entity shall not record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. An agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee, or substituted trustee under the deed of trust shall not record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b)  In performing acts required by this article or responding to requests for payoff or reinstatement information, the trustee shall not incur liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article or responding to requests for payoff or reinstatement information, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c)  A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive

evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d)  All of the following shall constitute privileged communications pursuant to Section 47:

(1)  The mailing, publication, and delivery of notices as required by this section.

(2)  Performance of the procedures set forth in this article.

(3)  Performance of the functions and procedures set forth in this article if those functions and procedures are necessary to carry out the duties described in Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.

(e)  There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

(f)  With respect to residential real property containing no more than four dwelling units, a separate document containing a summary of the notice of default information in English and the languages described in Section 1632 shall be attached to the notice of default provided to the mortgagor or trustor pursuant to Section 2923.3.

SEC. 2.   Section 2924.21 is added to the Civil Code, to read:

2924.21.   A person shall not contact, solicit, or initiate communication with an owner to claim the surplus funds from a foreclosure sale of the owner's residence before 90 days after the trustee's deed has been recorded.

SEC. 3.   Section 2924c of the Civil Code is amended to read:

2924c.  (a) (1)  Whenever all or a portion of the principal sum of any obligation secured by deed of trust or mortgage on real property or an estate for years therein hereafter executed has, prior to the maturity date fixed in that obligation, become due or been declared due by reason of default in payment of interest or of any installment of principal, or by reason of failure of trustor or mortgagor to pay, in accordance with the terms of that obligation or of the deed of trust or mortgage, taxes, assessments, premiums for insurance, or advances made by beneficiary or mortgagee in accordance with the terms of that obligation or of the deed of trust or mortgage, the trustor or mortgagor or their successor in interest in the mortgaged or trust property or any part thereof, or any beneficiary under a subordinate deed of trust or any other person having a subordinate lien or encumbrance of record thereon, at any time within the period specified in subdivision (e), if the power of sale therein is to be exercised, or, otherwise at any time prior to entry of the decree of foreclosure, may pay to the beneficiary or the mortgagee or their successors in interest, respectively, the entire amount due, at the time payment is tendered, with respect to (A) all amounts of principal, interest, taxes, assessments, insurance premiums, or advances actually known by the beneficiary to be, and that are, in default and shown in the notice of default, under the terms of the deed of trust or mortgage and

the obligation secured thereby, (B) all amounts in default on recurring obligations not shown in the notice of default, and (C) all reasonable costs and expenses, subject to subdivision (c), that are actually incurred, or will be incurred as a direct result of the payment being tendered, in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees, subject to subdivision (d), other than the portion of principal as would not then be due had no default occurred, and thereby cure the default theretofore existing, and thereupon, all proceedings theretofore had or instituted shall be dismissed or discontinued and the obligation and deed of trust or mortgage shall be reinstated and shall be and remain in force and effect, the same as if the acceleration had not occurred. This section does not apply to bonds or other evidences of indebtedness authorized or permitted to be issued by the Department of Financial Protection and Innovation or made by a public utility subject to the Public Utilities Code. For the purposes of this subdivision, the term "recurring obligation" means all amounts of principal and interest on the loan, or rents, subject to the deed of trust or mortgage in default due after the notice of default is recorded; all amounts of principal and interest or rents advanced on senior liens or leaseholds that are advanced after the recordation of the notice of default; and payments of taxes, assessments, and hazard insurance advanced after recordation of the notice of default. If the beneficiary or mortgagee has made no advances on defaults that would constitute recurring obligations, the beneficiary or mortgagee may require the trustor or mortgagor to provide reliable written evidence that the amounts have been paid prior to reinstatement.

(2) If the trustor, mortgagor, or other person authorized to cure the default pursuant to this subdivision does cure the default, the beneficiary or mortgagee or the agent for the beneficiary or mortgagee shall, within 21 days following the reinstatement, execute and deliver to the trustee a notice of rescission that rescinds the declaration of default and demand for sale and advises the trustee of the date of reinstatement. The trustee shall cause the notice of rescission to be recorded within 30 days of receipt of the notice of rescission and of all allowable fees and costs.

No charge, except for the recording fee, shall be made against the trustor or mortgagor for the execution and recordation of the notice which rescinds the declaration of default and demand for sale.

(b) (1) The notice, of any default described in this section, recorded pursuant to Section 2924, and mailed to any person pursuant to Section 2924b, shall begin with the following statement, printed or typed thereon:

"IMPORTANT NOTICE [14-point boldface type if printed or in capital letters if typed]

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, [14-point boldface type if printed or in capital letters if typed] and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and

expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is ______________________ as of ____________________
(Date)

and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

__________________________________________
(Name of beneficiary or mortgagee)

__________________________________________
(Mailing address)

__________________________________________
(Telephone)

If you have any questions, you should contact a lawyer or the governmental agency that may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION. [14-point boldface type if printed or in capital letters if typed]"

Unless otherwise specified, the notice, if printed, shall appear in at least 12-point boldface type.

If the obligation secured by the deed of trust or mortgage is a contract or agreement described in paragraph (1) or (4) of subdivision (a) of Section 1632, the notice required herein shall be in Spanish if the trustor requested a Spanish language translation of the contract or agreement pursuant to Section 1632. If the obligation secured by the deed of trust or mortgage is contained in a home improvement contract, as defined in Sections 7151.2 and 7159 of the Business and Professions Code, which is subject to Title 2 (commencing with Section 1801), the seller shall specify on the contract whether or not the contract was principally negotiated in Spanish and if the contract was principally negotiated in Spanish, the notice required herein shall be in Spanish. No assignee of the contract or person authorized to record the notice of default shall incur any obligation or liability for failing to mail a notice in Spanish unless Spanish is specified in the contract or the assignee or person has actual knowledge that the secured obligation was principally negotiated in Spanish. Unless specified in writing to the contrary, a copy of the notice required by subdivision (c) of Section 2924b shall be in English.

(2) Any failure to comply with the provisions of this subdivision shall not affect the validity of a sale in favor of a bona fide purchaser or the rights of an encumbrancer for value and without notice.

(c) Costs and expenses that may be charged pursuant to Sections 2924 to 2924i, inclusive, shall be limited to the costs incurred for recording, mailing, including certified and express mail charges, publishing, and posting notices required by Sections 2924 to 2924i, inclusive, recording a notice of rescission under this section, postponement pursuant to Section 2924g not to exceed one hundred dollars ($100) per postponement and a fee for a trustee's sale guarantee or, in the event of judicial foreclosure, a litigation guarantee. For purposes of this subdivision, a trustee or beneficiary may purchase a trustee's sale guarantee at a rate meeting the standards contained in Sections 12401.1 and 12401.3 of the Insurance Code.

(d) (1) Trustee's or attorney's fees that may be charged pursuant to subdivision (a), or until the notice of sale is deposited in the mail to the trustor as provided in Section 2924b, if the sale is by power of sale contained in the deed of trust or mortgage, or, otherwise at any time prior to the decree of foreclosure, are hereby authorized to be in an amount as follows:

(A) If the unpaid principal sum secured is fifty thousand dollars ($50,000) or less, then in a base amount that does not exceed three hundred fifty dollars ($350).

(B) If the unpaid principal sum secured is greater than fifty thousand dollars ($50,000) but does not exceed one hundred fifty thousand dollars ($150,000), then in a base amount that does not exceed three hundred fifty dollars ($350) plus one-half of 1 percent of the unpaid principal sum secured exceeding fifty thousand dollars ($50,000).

(C) If the unpaid principal sum secured is greater than one hundred fifty thousand dollars ($150,000) but does not exceed five hundred thousand dollars ($500,000), then in a base amount that does not exceed three hundred dollars ($300) plus one-half of 1 percent of the unpaid principal sum secured exceeding fifty thousand dollars ($50,000) up to and including one hundred fifty thousand dollars ($150,000) plus one-quarter of 1 percent of any portion of the unpaid principal sum secured exceeding one hundred fifty thousand dollars ($150,000).

(D) If the unpaid principal sum secured is greater than five hundred thousand dollars ($500,000), then in a base amount that does not exceed three hundred dollars ($300) plus one-half of 1 percent of the unpaid principal sum secured exceeding fifty thousand dollars ($50,000) up to and including one hundred fifty thousand dollars ($150,000) plus one-quarter of 1 percent of any portion of the unpaid principal sum secured exceeding one hundred fifty thousand dollars ($150,000) up to and including five hundred thousand dollars ($500,000) plus one-eighth of 1 percent of any portion of the unpaid principal sum secured exceeding five hundred thousand dollars ($500,000).

(2) Any charge for trustee's or attorney's fees authorized by this subdivision shall be conclusively presumed to be lawful and valid where the charge does not exceed the amounts authorized in this subdivision. For purposes of this subdivision, the unpaid principal sum secured shall be determined as of the date the notice of default is recorded.

(e) Reinstatement of a monetary default under the terms of an obligation secured by a deed of trust, or mortgage may be made at any time within the period commencing with the date of recordation of the notice of default until five business days prior to the date of sale set forth in the initial recorded notice of sale.

In the event the sale does not take place on the date set forth in the initial recorded notice of sale or a subsequent recorded notice of sale is required to be given, the right of reinstatement shall be revived as of the date of recordation of the subsequent notice of sale, and shall continue from that date until five business days prior to the date of sale set forth in the subsequently recorded notice of sale.

In the event the date of sale is postponed on the date of sale set forth in either an initial or any subsequent notice of sale, or is postponed on the date declared for sale at an immediately preceding postponement of sale, and, the postponement is for a period that exceeds five business days from the date set forth in the notice of sale, or declared at the time of postponement, then the right of reinstatement is revived as of the date of postponement and shall continue from that date until five business days prior to the date of sale declared at the time of the postponement.

Nothing contained herein shall give rise to a right of reinstatement during the period of five business days prior to the date of sale, whether the date of sale is noticed in a notice of sale or declared at a postponement of sale.

Pursuant to the terms of this subdivision, no beneficiary, trustee, mortgagee, or their agents or successors shall be liable in any manner to a trustor, mortgagor, their agents or successors or any beneficiary under a subordinate deed of trust or mortgage or any other person having a subordinate lien or encumbrance of record thereon for the failure to allow a reinstatement of the obligation secured by a deed of trust or mortgage during the period of five business days prior to the sale of the security property, and no such right of reinstatement during this period is created by this section. Any right of reinstatement created by this section is terminated five business days prior to the date of sale set forth in the initial date of sale, and is revived only as prescribed herein and only as of the date set forth herein.

As used in this subdivision, the term "business day" has the same meaning as specified in Section 9.

SEC. 4.   Section 2924h of the Civil Code, as amended by Section 7 of Chapter 642 of the Statutes of 2022, is amended to read:

2924h.   (a)  Each and every bid made by a bidder at a trustee's sale under a power of sale contained in a deed of trust or mortgage shall be deemed to be an irrevocable offer by that bidder to purchase the property being sold by the trustee under the power of sale for the amount of the bid. Any second or subsequent bid by the same bidder or any other bidder for a higher amount shall be a cancellation of the prior bid.

(b)  At the trustee's sale the trustee shall have the right (1) to require every bidder to show evidence of the bidder's ability to deposit with the trustee the full amount of their final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee prior to, and as a condition to, the recognizing of the bid, and to conditionally accept and hold these amounts for the duration of the sale, and (2) to require the last and highest bidder to deposit, if not deposited previously, the full amount of the bidder's final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee, immediately prior to the completion of the sale, the completion of the sale being so announced by the fall of the hammer or in another customary manner. The present beneficiary of the deed of trust under foreclosure shall have the right to offset their bid or bids only to the extent of the total amount due the beneficiary including the trustee's fees and expenses.

(c)  In the event the trustee accepts a check drawn by a credit union or a savings and loan association pursuant to this subdivision or a cash equivalent designated in the notice of sale, the trustee may withhold the issuance of the trustee's deed to the successful bidder submitting the check drawn by a state or federal credit union or savings and loan association or the cash equivalent until funds become available to the payee or endorsee as a matter of right.

For the purposes of this subdivision, the trustee's sale shall be deemed final upon the acceptance of the last and highest bid, and shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 21 calendar days after the sale, or the next business day following the 21st day if the county recorder in which the property is located is closed on the 21st day. If an eligible bidder submits a written notice of intent to bid pursuant to paragraph (2) of subdivision (c) of Section 2924m, the trustee's sale shall be deemed perfected as of 8 a.m. on the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale or the next business day following the 60th day if the county recorder in which the property is located is closed on the 60th day. However, the sale is subject to an automatic rescission for a failure of consideration in the event the funds are not "available for withdrawal" as defined in Section 12413.1 of the Insurance Code. The trustee shall send a notice of rescission for a failure of consideration to the last and highest bidder submitting the check or alternative instrument, if the address of the last and highest bidder is known to the trustee.

If a sale results in an automatic right of rescission for failure of consideration pursuant to this subdivision, the interest of any lienholder shall be reinstated in the same priority as if the previous sale had not occurred.

(d)  If the trustee has not required the last and highest bidder to deposit the cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee in the manner set forth in paragraph (2) of subdivision (b), the trustee shall complete the sale. If the last and highest bidder then fails to deliver to the trustee, when demanded, the amount of their final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee, that bidder shall be liable to the trustee for all damages which the trustee may sustain by the refusal to deliver to the trustee the amount of the final bid, including any court costs and reasonable attorney's fees.

If the last and highest bidder willfully fails to deliver to the trustee the amount of their final bid in cash, a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent which has been designated in the notice of sale as acceptable to the trustee, or if the last and highest bidder cancels a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union, or a check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state, or a cash equivalent that has been designated in the notice of sale as acceptable to the trustee, that bidder shall be guilty of a misdemeanor punishable by a fine of not more than two thousand five hundred dollars ($2,500).

In the event the last and highest bidder cancels an instrument submitted to the trustee as a cash equivalent, the trustee shall provide a new notice of sale in the manner set forth in Section 2924f and shall be entitled to recover the costs of the new notice of sale as provided in Section 2924c.

(e) Any postponement or discontinuance of the sale proceedings shall be a cancellation of the last bid.

(f) Except as specifically provided in Section 2924m, in the event that this section conflicts with any other statute, then this section shall prevail.

(g) It shall be unlawful for any person, acting alone or in concert with others, (1) to offer to accept or accept from another, any consideration of any type not to bid, or (2) to fix or restrain bidding in any manner, at a sale of property conducted pursuant to a power of sale in a deed of trust or mortgage. However, it shall not be unlawful for any person, including a trustee, to state that a property subject to a recorded notice of default or subject to a sale conducted pursuant to this chapter is being sold in an "as-is" condition.

In addition to any other remedies, any person committing any act declared unlawful by this subdivision or any act which would operate as a fraud or deceit upon any beneficiary, trustor, or junior lienor shall, upon conviction, be fined not more than ten thousand dollars ($10,000) or imprisoned in the county jail for not more than one year, or be punished by both that fine and imprisonment.

(h) This section shall remain in effect only until January 1, 2031, and as of that date is repealed, unless a later enacted statute that is enacted before January 1, 2031, deletes or extends that date.

(i) The amendments made to this section by the bill adding this subdivision shall become operative on January 1, 2022.

(j) The amendments made to this section by the act adding this subdivision are declaratory of existing law.

SEC. 5.   Section 2924m of the Civil Code is amended to read:

2924m.   (a)  For purposes of this section:

(1) "Prospective owner-occupant" means a natural person who presents to the trustee an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, that:

(A) They will occupy the property as their primary residence within 60 days of the trustee's deed being recorded.

(B) They will maintain their occupancy for at least one year.

(C) They are not any of the following:

(i) The mortgagor or trustor.

(ii) The child, spouse, or parent of the mortgagor or trustor.

(iii) The grantor of a living trust that was named in the title to the property when the notice of default was recorded.

(iv) An employee, officer, or member of the mortgagor or trustor.

(v) A person with an ownership interest in the mortgagor, unless the mortgagor is a publicly traded company.

(D) They are not acting as the agent of any other person or entity in purchasing the real property.

(2) "Eligible tenant buyer" means a natural person who at the time of the trustee's sale:

(A) Is occupying the real property as their primary residence.

(B) Is occupying the real property under a rental or lease agreement entered into as the result of an arm's-length transaction with the mortgagor or trustor, or with the mortgagor or trustor's predecessor in interest, on a date prior to the recording of the notice of default against the property, and who attaches evidence demonstrating the existence of the tenancy to the affidavit or declaration required pursuant to subparagraph (B) of paragraph (2) of subdivision (c).

(C) Is not the mortgagor or trustor, or the child, spouse, or parent of the mortgagor or trustor.

(D) Is not acting as the agent of any other person or entity in purchasing the real property. Submission of a bid pursuant to paragraph (3) of subdivision (c) does not violate this subparagraph.

(E) Has not filed a petition under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code at any time during the period from the date of the trustee's sale of the property to the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday.

(3) "Eligible bidder" means any of the following:

(A) An eligible tenant buyer.

(B) A prospective owner-occupant.

(C) A nonprofit association, nonprofit corporation, or cooperative corporation in which an eligible tenant buyer is a voting member or director.

(D) An eligible nonprofit corporation with all of the following attributes:

(i) It has a determination letter from the Internal Revenue Service affirming its tax-exempt status pursuant to Section 501(c)(3) of the Internal Revenue Code and is not a private foundation as that term is defined in Section 509 of the Internal Revenue Code.

(ii) It has its principal place of business in California.

(iii) The primary residences of all board members are located in California.

(iv) One of its primary activities is the development and preservation of affordable rental or home ownership housing in California.

(v) It is registered and in good standing with the Attorney General's Registry of Charities and Fundraisers, pursuant to the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Article 7 (commencing with Section 12580) of Chapter 6 of Part 2 of Division 3 of Title 2 of the Government Code).

(E) A limited liability company wholly owned by one or more eligible nonprofit corporations as described in subparagraph (C) or (D).

(F) A community land trust, as defined in clause (ii) of subparagraph (C) of paragraph (11) of subdivision (a) of Section 402.1 of the Revenue and Taxation Code.

(G) A limited-equity housing cooperative as defined in Section 817.

(H) The state, the Regents of the University of California, a county, city, district, public authority, or public agency, and any other political subdivision or public corporation in the state.

(4) "Evidence demonstrating the existence of the tenancy" means a copy of the dated and signed rental or lease agreement or, if a copy of the dated and signed rental or lease agreement is not available, then one of the following:

(A) Evidence of rent payments made for the property by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default.

(B) Copies of utility bills for the property payable by the person asserting that they are an eligible tenant buyer for the six months prior to the recording of the notice of default.

(b) This section does not prevent an eligible tenant buyer who meets the conditions set forth in paragraph (1) of subdivision (a) from being deemed a prospective owner-occupant.

(c) A trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property containing one to four residential units pursuant to Section 2924g shall not be deemed final until the earliest of the following:

(1) If a prospective owner-occupant is the last and highest bidder at the trustee's sale, the date upon which the conditions set forth in Section 2924h for the sale to become final are met. The prospective owner-occupant shall submit to the trustee the affidavit or declaration described in paragraph (1) of subdivision (a) at the trustee's sale or to the trustee by 5 p.m. on the next business day following the trustee's sale.

(2) Fifteen days after the trustee's sale unless at least one eligible tenant buyer or eligible bidder submits to the trustee either a bid pursuant to paragraph (3) or (4) or a nonbinding written notice of intent to place such a bid. The bid or written notice of intent to place a bid shall:

(A) Be sent to the trustee by certified mail, overnight delivery, or other method that allows for confirmation of the delivery date.

(B)  Be accompanied by an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, identifying the category set forth in paragraph (3) of subdivision (a) to which the person or entity submitting the bid or nonbinding written notice of intent belongs and stating that the person meets the criteria for that category. If the winning bid is placed by an eligible bidder described in subparagraphs (C) to (G), inclusive, of paragraph (3) of subdivision (a), the affidavit or declaration shall affirm the bidder's duty to comply with subdivision (a) of Section 2924o for the benefit of tenants occupying the property.

(C)  Be received by the trustee no later than 5 p.m. on the 15th day after the trustee's sale, or the next business day following the 15th day if the 15th day is a weekend or holiday.

(D)  Contain a current telephone number and return mailing address for the person submitting the bid or nonbinding written notice of intent.

(3)  (A)  The date upon which a representative of all of the eligible tenant buyers submits to the trustee a bid in an amount equal to the full amount of the last and highest bid at the trustee's sale, in the form of cash, a cashier's check drawn on a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. This bid shall:

(i)  Be sent to the trustee by certified mail, overnight delivery, or other method that allows for confirmation of the delivery date.

(ii)  Be accompanied by an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, stating that the persons represented meet the criteria set forth in paragraph (2) of subdivision (a), and that the persons represented are all of the eligible tenant buyers.

(iii)  Meet either of the following criteria:

(I)  Be received by the trustee no later than 5 p.m. on the 15th day after the trustee's sale, or the next business day following the 15th day if the 15th day is a weekend or holiday.

(II)  Be received by the trustee no later than 5 p.m. on the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday, if at least one of the eligible tenant buyers submitted a nonbinding written notice of intent to place a bid pursuant to paragraph (2).

(iv)  Contain a current telephone number and return mailing address for the person submitting the bid.

(B)  If the conditions in this paragraph are satisfied, the eligible tenant buyers shall be deemed the last and highest bidder pursuant to the power of sale.

(4)  (A)  Forty-five days after the trustee's sale, except that during the 45-day period, an eligible bidder may submit to the trustee a bid in an amount that exceeds the last and highest bid at the trustee's sale, in the form of cash, a cashier's check drawn on a state or national bank, a cashier's check drawn by a state or federal credit union, or a cashier's check drawn by a state or

federal savings and loan association, savings association, or savings bank specified in Section 5102 of the Financial Code and authorized to do business in this state. The bid shall:

(i)  Be sent to the trustee by certified mail, overnight delivery, or other method that allows for confirmation of the delivery date.

(ii)  Be accompanied by an affidavit or declaration, pursuant to Section 2015.5 of the Code of Civil Procedure, identifying the category set forth in paragraph (3) of subdivision (a) to which the eligible bidder belongs and stating that the eligible bidder meets the criteria for that category.

(iii)  Be received by the trustee no later than 5 p.m. on the 45th day after the trustee's sale, or the next business day following the 45th day if the 45th day is a weekend or holiday, if the eligible bidder submitted a nonbinding written notice of intent to bid pursuant to paragraph (2). Notwithstanding clause (i), on the last day that bids are eligible to be received by the trustee under this clause, the trustee shall not receive any bid that is not sent by certified mail or overnight mail.

(iv)  Contain a current telephone number and return mailing address for the person submitting the bid.

(v)  Be limited to a single bid amount and not contain instructions for successive bid amounts.

(B)  As of 5 p.m. on the 45th day after the trustee's sale, if one or more eligible bidders has submitted a bid that meets the conditions in this paragraph, the eligible bidder that submitted the highest bid shall be deemed the last and highest bidder pursuant to the power of sale. The trustee shall return any losing bid to the eligible bidder that submitted it.

(d)  The trustee may reasonably rely on affidavits and declarations regarding bidder eligibility received under this section. The affidavit or declaration of the winning bidder shall be attached as an exhibit to the trustee's deed and recorded. If the winning bidder is not required to submit an affidavit or declaration pursuant to this section, the trustee shall attach as an exhibit to the trustee's deed a statement that no affidavit or declaration is required by this section, and the lack of an affidavit or declaration shall not prevent the deed from being recorded and shall not invalidate the transfer of title pursuant to the trustee's deed.

(e)  If the conditions set forth in paragraph (1) of subdivision (c) for a sale to be deemed final are not met, then:

(1)  Not later than 48 hours after the trustee's sale of property under Section 2924g, the trustee or an authorized agent shall post on the internet website set forth on the notice of sale, as required under paragraph (8) of subdivision (b) of Section 2924f, the following information:

(A)  The date on which the trustee's sale took place.

(B)  The amount of the last and highest bid at the trustee's sale.

(C)  An address at which the trustee can receive documents sent by United States mail and by a method of delivery providing for overnight delivery.

(2)  The information required to be posted on the internet website under paragraph (1) shall also be made available not later than 48 hours after the trustee's sale of property under Section 2924g by calling the telephone

number set forth on the notice of sale as required under paragraph (8) of subdivision (b) of Section 2924f.

(3) The information required to be provided under paragraphs (1) and (2) shall be made available using the file number assigned to the case that is set forth on the notice of sale as required under paragraph (8) of subdivision (b) of Section 2924f.

(4) The information required to be provided under paragraphs (1) and (2) shall be made available for a period of not less than 45 days after the sale of property under Section 2924g.

(5) A disruption of any of these methods of providing the information required under paragraphs (1) and (2) to allow for reasonable maintenance or due to a service outage shall not be deemed to be a violation of this subdivision.

(6) The information to be provided by the trustee to eligible bidders or to persons considering whether to submit a bid or notice of intent to bid pursuant to this section is limited to the information set forth in paragraph (1).

(f) Title to the property shall remain with the mortgagor or trustor or successor in interest until the property sale is deemed final as provided in this section.

(g) A prospective owner-occupant shall not be in violation of this section if a legal owner's compliance with the requirements of Section 2924n renders them unable to occupy the property as their primary residence within 60 days of the trustee's deed being recorded.

(h) This section shall prevail over any conflicting provision of Section 2924h.

(i) For trustee's sales where the winning bidder is an eligible bidder under this section, the trustee or an authorized agent shall electronically send the following information to the office of the Attorney General within 15 days of the sale being deemed final:

(1) The dates when the trustee's sale took place and when it was deemed final.

(2) The name of the winning bidder.

(3) The street address and assessor's parcel number of the subject property.

(4) A copy of the trustee's deed, as executed, including the attached affidavit or declaration of the winning bidder.

(5) The category set forth in paragraph (3) of subdivision (a) to which the eligible bidder belongs.

(j) The Attorney General, a county counsel, a city attorney, or a district attorney may bring an action for specific performance or any other remedy at equity or at law to enforce this section.

(k) The Department of Justice shall include a summary of information contained in the reports received pursuant to subdivision (i) in a searchable repository on its official internet website.

(*l*)  The pendency of a determination of finality under subdivision (c) shall not cause termination of any hazard insurance coverage in effect at the time of the trustee's sale.

(m)  This section shall remain in effect only until January 1, 2031, and as of that date is repealed, unless a later enacted statute that is enacted before January 1, 2031, deletes or extends that date.

SEC. 6.   Section 3273.10 of the Civil Code is amended to read:

3273.10.   (a)  If a mortgage servicer denies a forbearance request made during the effective time period, the mortgage servicer shall provide written notice to the borrower that sets forth the specific reason or reasons that forbearance was not provided, if both of the following conditions are met:

(1)  The borrower was current on payment as of February 1, 2020.

(2)  The borrower is experiencing a financial hardship that prevents the borrower from making timely payments on the mortgage obligation due, directly or indirectly, to the COVID-19 emergency.

(b)  If the written notice in subdivision (a) cites any defect in the borrower's request, including an incomplete application or missing information, that is curable, the mortgage servicer shall do all of the following:

(1)  Specifically identify any curable defect in the written notice.

(2)  Provide 21 days from the mailing date of the written notice for the borrower to cure any identified defect.

(3)  Accept receipt of the borrower's revised request for forbearance before the aforementioned 21-day period lapses.

(4)  Respond to the borrower's revised request within five business days of receipt of the revised request.

(c)  If a mortgage servicer denies a forbearance request made during the effective time period, the declaration required by subdivision (b) of Section 2923.5 shall include the written notice together with a statement as to whether forbearance was or was not subsequently provided.

(d)  A mortgage servicer, mortgagee, or beneficiary of the deed of trust, or an authorized agent thereof, who, with respect to a borrower of a federally backed mortgage, complies with the relevant provisions regarding forbearance in Section 4022 of the federal Coronavirus Aid, Relief, and Economic Security Act (the CARES Act) (Public Law 116-136), including any amendments or revisions to those provisions, shall be deemed to be in compliance with this section. A mortgage servicer of a nonfederally backed mortgage that provides forbearance that is consistent with the requirements of the CARES Act for federally backed mortgages shall be deemed to be in compliance with this section.

SEC. 7.   This act is an urgency statute necessary for the immediate preservation of the public peace, health, or safety within the meaning of Article IV of the California Constitution and shall go into immediate effect. The facts constituting the necessity are:

To enable the smooth and predictable process of foreclosure and to protect consumers impacted by the foreclosure process, it is necessary for this act to take effect immediately.

O

**EXHIBIT 2**

CONCURRENCE IN SENATE AMENDMENTS
AB 295 (Lowenthal), As Amended June 13, 2024,
2/3 vote. Urgency,
Assembly Floor Analysis, June 25, 2024
file:///C:/Users/m.fineman/Downloads/202320240AB295_Assembly%20Floor%20Analysis.pdf

REPRINTED BELOW

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

CONCURRENCE IN SENATE AMENDMENTS
AB 295 (Lowenthal)
As Amended  June 13, 2024
2/3 vote.  Urgency

## SUMMARY

Original Committee of Reference: TRANS

Enhances the anti-fraud provisions of existing foreclosure law and makes several technical and
conforming changes regarding the duties and responsibilities of a trustee overseeing a
foreclosure.

**Senate Amendments**
Current Committee Recommendation: concur

Delete the Assembly version of this bill, and instead:

1) Prohibits any person from contacting, soliciting, or initiating communication with an owner
   to claim the surplus funds from a foreclosure sale of the owner's residence before 90 days
   after the trustee's deed has been recorded.

2) Extends liability protection to trustees responding to requests for payoff or reinstatement
   information regarding the nature and the amount of the default under the secured obligation,
   deed of trust, or mortgage or for any good faith error resulting from reliance on information
   provided to the trustee by the beneficiary concerning the amount or nature of the default.

3) Permits a trustee to recover reasonable costs and expenses that will be incurred as a direct
   result of outstanding payment obligations being paid by the mortgagor.

4) Permits a trustee to collect costs and expenses associated with recording a notice of
   rescission in the event the mortgagor makes the outstanding payment obligations.

5) Revises and remedies an erroneous cross-reference in existing law regarding the procedure
   for a nonbinding written notice.

6) Provides that the cross-reference revision in 5), above, is declarative of existing law.

7) Clarifies that the successive bids prohibition in existing law applies to all eligible bidders.

8) Clarifies that a trustee is to transmit the trustee's deed to the Attorney General upon the
   deed's execution, and not upon its recordation.

9) Clarifies that a mortgage servicer's obligation to provide notice of their forbearance denial
   applies only to forbearance requests made during the effective time period, as specified.

10) Clarifies that title to the property must remain with the mortgagor or trustor or successor in
    interest until the property sale is deemed final.

11) Increases the amount that can be charged for costs and expenses incurred for recording, mailing, including certified and express mail charges, publishing, and posting notices from $50 to $100.

12) Adopts an urgency clause.

## COMMENTS

The Legislature first enacted statutory provisions regulating foreclosure consultants in 1979, as part of the broader Home Equity Sales Contract Act (SB 1128 (Smith) Chapter 1029, Statutes of 1979). The Home Equity Sales Act (Civil Code Sections 1695 *et seq.*) regulated the activities of the "equity purchaser" – a person who buys properties facing foreclosure prior to foreclosure sale. Later modifications made to the law regulated the activities of the "foreclosure consultant," persons who do not buy the home but purport to assist troubled homeowners in the foreclosure process. In passing various changes to the Act, the Legislature repeatedly made findings and declarations that too often homeowners facing foreclosure find themselves subject to machinations of "unscrupulous" persons who take advantage of the homeowner during a particularly stressful time. Moreover, many of the more questionable equity purchasers and "consultants" targeted those whom they believed to be the most vulnerable populations: the elderly, the poor, and the financially unsophisticated.

Clearly, exploitation of homeowners facing foreclosure is an old problem and the Legislature has succeeded in curbing much of this unscrupulous behavior. But, in part because foreclosures are listed in public records, the most vulnerable homeowners can easily be identified and targeted by individuals offering false hopes of a way out of a desperate financial problem. To address this issue, existing law defines foreclosure fraud, creates procedures for legitimate foreclosure consultations, and prescribes punishment for those who violate those procedures. At the time of their passage, these statutes did not regulate the act of "surplus chasing," whereby individuals solicit borrowers to recover surplus foreclosure fees that they are entitled to under the law—often for an exorbitant fee.

In 2004, in an effort to curb this cottage industry, the Legislature expanded the definition of "foreclosure consultant" to include those individuals who "assist owner[s] in obtaining…the remaining proceeds from the foreclosure sale of the owner's residence." (SB 1277 (Ackerman) Chapter 177, Statutes of 2004.) It also expressly prohibited foreclosure consultants from entering into contracts with borrowers to access surplus funds.

Unfortunately, these provisions have been insufficient in stopping the practice of "surplus chasing," resulting in losses for already financially vulnerable borrowers. This bill seeks to bolster the protections in the existing law, thus better protecting vulnerable homeowners.

*What happens to surplus funds after a trustee sale?* In California, the process for disbursing excess funds after a trustee sale of a foreclosed property is governed by state law and the terms of the deed of trust. The trustee sale is the process whereby a foreclosed property is sold to pay off a loan in default. Excess funds are any proceeds from the sale that exceed the amount owed on the loan, and these funds are distributed according to a specific process. According to existing law, the trustee must first deduct any expenses associated with the sale, including trustee fees and costs incurred during the foreclosure process. The trustee must then also pay off the outstanding debt owed to the lender. Once these expenses are paid, any remaining funds are

distributed to the parties with an interest in the property, according to their lien priority. Finally, if anything is left over, the original borrower is entitled to those funds.

Notice of the sale, the name of the borrower, and the amount due is published in a newspaper at least 20 days prior to the sale. These requirements are intended to ensure that all interested parties have an opportunity to claim their share of any excess proceeds. While this public notice increases transparency, it also provides highly accessible information about the most vulnerable homeowners. Unfortunately, the author and sponsors of this measure note that unscrupulous actors are taking this information and further preying on the vulnerable.

To address concerns that bad actors are using public notices of trustee sales to prey on vulnerable Californians, this bill places a general prohibition on *any* individual, whether or not they fall within the definition of a foreclosure consultant under Civil Code Section 2945 or not, from "soliciting, contacting or initiating communication with an owner to claim the surplus funds from a foreclosure sale of the owner's residence for 90 days after the trustee's deed has been recorded." By placing a blanket prohibition on any solicitation for 90 days, the bill provides the trustee with enough time to meet their statutory obligation to distribute funds based on priority, and then alert the borrower directly regarding their entitled-to surplus funds before a scammer can get to them. This bill helps ensure that foreclosed-on borrowers get the full amount of surplus funds to which they are entitled under the law.

In 2020, as one means of mitigating the trend towards increased corporate ownership of single-family homes in California, the Legislature enacted SB 1079 (Skinner), Chapter 202. SB 1079 created a process (now known in the real estate industry as the "SB 1079 process") through which three categories of eligible bidders—prospective owner-occupants; existing tenants living in the property; and designated entities, including nonprofit affordable housing providers, community land trusts, limited-equity housing cooperatives, and public entities—could acquire single-family homes by matching or exceeding bids placed at foreclosure auctions. In 2022, SB 1079 was updated by AB 1837 (Bonta), Chapter 642, Statutes of 2022 to curb fraud, address identified implementation challenges, and increase the stock of affordable housing. This bill resolves improper cross references and makes other clarifying changes to those statutes.

**According to the Author**

AB 295 helps strengthen consumer protection laws for people going through foreclosure and makes other technical and clarifying changes. Foreclosure trustees are seeing an increase in predatory activity from surplus fund chasers, who are individuals seeking to collect surplus funds on behalf of someone already entitled to these funds. These chasers seek out people going through foreclosure and offer to help assist in getting "as much money from their foreclosure as possible." Existing law already requires a trustee to send all surplus funds back to the former homeowner after all fees and expenses are paid off. These chasers are simply scamming vulnerable Californians out of their equity. AB 295 restricts surplus fund chasers from seeking to contact the former homeowner or anyone else entitled to surplus funds until 90 days after the trustee's deed recording; thus giving trustees the opportunity to find everyone who is entitled to these funds without costly third-party intervention.

**Arguments in Support**
The United Trustees Association, the sponsor of this bill and a supporter of AB 1837 that sought to clarify and improve the AB 1079 process, states:

When a borrower goes into foreclosure on their home and is subject to a note and deed of trust, a foreclosure trustee may sell the property at a trustee's sale pursuant to existing law in the civil code. AB 295 makes a variety of technical and clean-up changes in California's foreclosure laws to resolve improper cross-references and other minor changes. Specifically, this bill seeks to make several changes to the post-trustee sale process enacted by SB 1079 (Skinner, 2020) and several other foreclosure-related statutes. For example, the bill corrects the prohibition on step bids and instructions which currently applies only to eligible tenant buyers but should apply to all eligible buyers and corrects an improper cross-reference in Civil Code Section 2924h. AB 295 also clarifies the type of deed copy that trustees must submit to the Attorney General's office which was enacted by AB 1837 (Bonta) [Chapter 642, Statutes of] 2022.

AB 295 also seeks to protect those entitled to surplus funds following a trustee's sale from individuals who are attempting to take advantage of the foreclosure process. Existing law already requires a trustee to distribute all surplus funds following a trustee's sale to the borrower and anyone else who is entitled to those funds. Known as "surplus fund chasers", there are companies which seek out these borrowers and others by offering to assist in acquiring surplus funds, oftentimes at 25% to 40% of their entitled amount. AB 295 seeks to restrict these surplus fund chasers from seeking to contact a borrower and others until 90 days after the trustee's deed has been recorded. This 90-day delay will allow trustees to find the appropriate individuals entitled to these funds and distribute these funds without them having to pay these exorbitant fees. We believe this approach helps to protect the borrower and others from having their equity and surplus funds unnecessarily reduced.

**Arguments in Opposition**
No opposition on file.

## FISCAL COMMENTS

None.

## VOTES

**ASM TRANSPORTATION:  15-0-0**
**YES:**  Friedman, Vince Fong, Berman, Juan Carrillo, Davies, Gipson, Hart, Jackson, Kalra, Lowenthal, Stephanie Nguyen, Sanchez, Wallis, Ward, Wicks

**ASM APPROPRIATIONS: 15-0-1**
**YES:**  Holden, Megan Dahle, Bryan, Calderon, Wendy Carrillo, Dixon, Mike Fong, Hart, Lowenthal, Mathis, Papan, Pellerin, Sanchez, Weber, Ortega
**ABS, ABST OR NV:**  Robert Rivas

**ASSEMBLY FLOOR:  80-0-0**
**YES:**  Addis, Aguiar-Curry, Alanis, Alvarez, Arambula, Bains, Bauer-Kahan, Bennett, Berman, Boerner, Bonta, Bryan, Calderon, Juan Carrillo, Wendy Carrillo, Cervantes, Chen, Connolly, Megan Dahle, Davies, Dixon, Essayli, Flora, Mike Fong, Vince Fong, Friedman, Gabriel, Gallagher, Garcia, Gipson, Grayson, Haney, Hart, Holden, Hoover, Irwin, Jackson, Jones- Sawyer, Kalra, Lackey, Lee, Low, Lowenthal, Maienschein, Mathis, McCarty, McKinnor, Muratsuchi, Stephanie Nguyen, Ortega, Pacheco, Papan, Jim Patterson, Joe Patterson, Pellerin,

Petrie-Norris, Quirk-Silva, Ramos, Reyes, Luz Rivas, Robert Rivas, Rodriguez, Blanca Rubio, Sanchez, Santiago, Schiavo, Soria, Ta, Ting, Valencia, Villapudua, Waldron, Wallis, Ward, Weber, Wicks, Wilson, Wood, Zbur, Rendon

**SENATE FLOOR: 36-0-4**
**YES:** Archuleta, Ashby, Atkins, Becker, Blakespear, Bradford, Caballero, Cortese, Dahle, Dodd, Eggman, Glazer, Gonzalez, Hurtado, Jones, Laird, Limón, McGuire, Menjivar, Min, Newman, Nguyen, Niello, Ochoa Bogh, Padilla, Portantino, Roth, Rubio, Seyarto, Skinner, Smallwood-Cuevas, Stern, Umberg, Wahab, Wiener, Wilk
**ABS, ABST OR NV:** Allen, Alvarado-Gil, Durazo, Grove

**ASM JUDICIARY: 11-0-1**
**YES:** Kalra, Dixon, Bauer-Kahan, Bryan, Connolly, Haney, Maienschein, McKinnor, Pacheco, Reyes, Sanchez
**ABS, ABST OR NV:** Joe Patterson

## UPDATED

VERSION: June 13, 2024

CONSULTANT: Nicholas Liedtke / JUD. / (916) 319-2334 FN: 0003637

Main Document Page 37 of 50

**EXHIBIT 3**

Date of Hearing: June 25, 2024

ASSEMBLY COMMITTEE ON JUDICIARY
Ash Kalra, Chair
AB 295 (Lowenthal) – As Amended June 13, 2024
FOR CONCURRENCE

SUBJECT: RESIDENTIAL REAL PROPERTY: FORECLOSURE

file:///C:/Users/m.fineman/Downloads/202320240AB295_Assembly%20Judiciary%20(1).pdf

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

REPLY TO DEBTOR'S OPPOSITION TO MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR ORDER CONFIRMING AUTOMATIC STAY DOES NOT APPLY UNDER 11 U.S.C. § 362(l) (UNLAWFUL DETAINER)

Date of Hearing: June 25, 2024

ASSEMBLY COMMITTEE ON JUDICIARY
Ash Kalra, Chair
AB 295 (Lowenthal) – As Amended June 13, 2024

FOR CONCURRENCE

**SUBJECT**: RESIDENTIAL REAL PROPERTY: FORECLOSURE

**KEY ISSUE**: IN ORDER TO PROTECT VULNERABLE CALIFORNIANS FROM POTENTIAL FRAUD, SHOULD THE LEGISLATURE ADD AN ANTI-FRAUD PROVISION TO RESTRICT ANY INDIVIDUAL FROM SEEKING TO COLLECT A BORROWER'S SURPLUS FUNDS FROM A FORECLOSURE SALE UNTIL 90 DAYS AFTER THE TRUSTEE'S DEED HAS BEEN RECORDED?

## SYNOPSIS

*Seeking to keep dishonest actors from preying on desperate Californians losing their homes to foreclosure, this bill makes a modest change to existing laws regulating access to surplus funds, the money remaining after all liens and fees are paid off in a foreclosure/trustee sale. Under existing law, the borrower—the one whose home was just foreclosed on—is entitled to all surplus funds without paying any additional fees. Existing law also prohibits "foreclosure consultants" from entering into a contract with a homeowner for the purpose of accessing those surplus funds at a fee. This prohibition, passed in 2004, has helped curb the practice of so-called "surplus chasers." However, bad actors who operate outside the definition of a "foreclosure consultant" can continue to contact homeowners, allowing the practice to nevertheless continue and depriving foreclosed-on borrowers of the right to access the full amount of surplus funds to which they are entitled under law.*

*Seeking to better protect vulnerable Californians, this bill clarifies that any individual, regardless of whether they fall within the existing definition of "foreclosure consultant," is prohibited from contacting, soliciting, or initiating communication with a borrower to access the surplus proceeds from a foreclosure sale for the 90 days following the recording of the deed of sale. The sponsor of this bill, the United Trustees Association, whose members are tasked with conducting foreclosure sales and distributing their proceeds, note that this bill will give trustees sufficient time to meet their statutory obligation to distribute funds based on lien priority and distribute any surplus funds to the borrower before a scammer is able to target them and get a share of their funds. There is no known opposition to this bill.*

**SUMMARY**: Enhances the anti-fraud provisions of existing foreclosure law and makes several technical and conforming changes regarding the duties and responsibilities of a trustee overseeing a foreclosure. Specifically, **this bill**:

1) Prohibits any person from contacting, soliciting, or initiating communication with an owner to claim the surplus funds from a foreclosure sale of the owner's residence before 90 days after the trustee's deed has been recorded.

2) Extends liability protection to trustees responding to requests for payoff or reinstatement information regarding the nature and the amount of the default under the secured obligation,

deed of trust, or mortgage or for any good faith error resulting from reliance on information provided to the trustee by the beneficiary concerning the amount or nature of the default.

3) Permits a trustee to recover reasonable costs and expenses that will be incurred as a direct result of outstanding payment obligations being paid by the mortgagor.

4) Permits a trustee to collect costs and expenses associated with recording a notice of rescission in the event the mortgagor makes the outstanding payment obligations.

5) Revises and remedies an erroneous cross-reference in existing law regarding the procedure for a nonbinding written notice.

6) Provides that the cross-reference revision in 5), above, is declarative of existing law.

7) Clarifies that the successive bids prohibition in existing law applies to all eligible bidders.

8) Clarifies that a trustee is to transmit the trustee's deed to the Attorney General upon the deed's execution, and not upon its recordation.

9) Clarifies that a mortgage servicer's obligation to provide notice of their forbearance denial applies only to forbearance requests made during the effective time period, as specified.

10) Clarifies that title to the property must remain with the mortgagor or trustor or successor in interest until the property sale is deemed final.

11) Increases the amount that can be charged for costs and expenses incurred for recording, mailing, including certified and express mail charges, publishing, and posting notices from $50 to $100.

12) Adopts an urgency clause.

**EXISTING LAW**:

1) Requires a trustee to send written notice of remaining proceeds to all persons with recorded interests in the real property within 30 days of the foreclosure sale. (Civil Code Section 2924j (a). Unless otherwise noted, all further references are to the Civil Code.)

2) Requires a trustee to distribute the proceeds of a trustee's sale in an order of priority, starting with the costs and expenses of the sale, the payment obligation secured by the mortgage that is the subject of the sale, any junior liens and then to the borrower. (Section 2924k.)

3) Requires a trustee to provide notice of a trustee sale by publishing notice of sale in a newspaper of general circulation where the property is located, containing information such as the borrower's name and the amount owed, at least 20 days before the sale date. (Section 2924f.)

4) Declares that vulnerable homeowners are increasingly relying on the services of foreclosure consultants, who often charge an exorbitant fee for a service when the homeowner could have obtained the remaining funds from the trustee's sale from the trustees directly if the homeowner had sufficient time to receive notices from the trustee regarding how and where to make a claim for excess proceeds. (Section 2945 (a).)

5) Defines "foreclosure consultant" as any person who, for compensation, offers a homeowner any services relating to a pending foreclosure, including, among other things, representations that the consultant will stop or postpone the foreclosure sale; obtain any forbearances from any beneficiary or mortgagee; assist the owner to obtain a loan or advance of funds; assist the owner in exercising or extending the right of reinstatement; ameliorate damage caused to the homeowners credit as a result of the foreclosure; or assist the owner in obtaining any remaining proceeds from a foreclosure sale. Excludes from the definition of "foreclosure consultant" certain licensed professionals, such as attorneys or mortgage lenders, engaged in the practice of their profession. (Section 2945.1 (a).)

6) Prohibits a foreclosure consultant from entering into a contract to recover surplus funds after a foreclosure sale. (Section 2945.4 (h).)

7) Establishes comprehensive procedures for conducting a foreclosure sale through an auction. (Sections 2924g and 2924h.)

8) Enacts a statutory scheme whereby eligible bidders may acquire properties consisting of one to four residential dwelling units offered at a foreclosure auction by matching or exceeding the last and highest offer made at the auction. (Section 2924m.)

9) Provides tenants, prospective owner-occupants, nonprofit affordable housing providers, and public entities a 45-day window to purchase residential properties of 1-4 units if they are able to match or exceed the highest bid at a preceding foreclosure auction. (Section 2924m.)

10) Provides liability protection to trustees in performing any required acts for any good faith error resulting from reliance on information provided in good faith by the beneficiary concerning the amount or nature of the default. (Section 2924 (b).)

11) Permits a trustee to recover reasonable costs and expenses incurred in enforcing the terms of the obligation, deed of trust, or mortgage, and trustee's or attorney's fees. (Section 2924c (a)(1).)

12) Permits a trustee to collect costs and expenses associated with recording, mailing, publishing, and posting certain required notices. (Section 2924c (c).)

13) Prohibits bidders from submitting successive bids. (Section 2924m (c)(3).)

14) Requires a trustee to submit a recorded deed for any successful transaction conducted under SB 1079's post-sale bid process to the Attorney General's Office. (Section 2924m (i)(4).)

15) Requires a mortgage servicer who denies a forbearance request to provide a declaration that they contacted the borrower, has tried with due diligence to contact the borrower, or that no contact was required pursuant to applicable rules, as well as a statement as to whether a forbearance was or was not subsequently denied. (Section 3273.10 (c).)

**FISCAL EFFECT**:  As currently in print this bill is keyed non-fiscal.

**COMMENTS**:  The Legislature first enacted statutory provisions regulating foreclosure consultants in 1979, as part of the broader Home Equity Sales Contract Act (SB 1128 (Smith) Chapter 1029, Statutes of 1979). The Home Equity Sales Act (Civil Code Sections 1695 *et seq.*)

regulated the activities of the "equity purchaser" – a person who buys properties facing foreclosure prior to foreclosure sale. Later modifications made to the law regulated the activities of the "foreclosure consultant," persons who do not buy the home but purport to assist troubled homeowners in the foreclosure process. In passing various changes to the Act, the Legislature repeatedly made findings and declarations that too often homeowners facing foreclosure find themselves subject to machinations of "unscrupulous" persons who take advantage of the homeowner during a particularly stressful time. Moreover, many of the more questionable equity purchasers and "consultants" targeted those whom they believed to be the most vulnerable populations: the elderly, the poor, and the financially unsophisticated. According to the author:

> AB 295 helps strengthen consumer protection laws for people going through foreclosure and makes other technical and clarifying changes. Foreclosure trustees are seeing an increase in predatory activity from surplus fund chasers, who are individuals seeking to collect surplus funds on behalf of someone already entitled to these funds. These chasers seek out people going through foreclosure and offer to help assist in getting “as much money from their foreclosure as possible.” Existing law already requires a trustee to send all surplus funds back to the former homeowner after all fees and expenses are paid off. These chasers are simply scamming vulnerable Californians out of their equity. AB 295 restricts surplus fund chasers from seeking to contact the former homeowner or anyone else entitled to surplus funds until 90 days after the trustee’s deed recording; thus giving trustees the opportunity to find everyone who is entitled to these funds without costly third-party intervention.

***Abuse of homeowners facing dire circumstances has been a longstanding problem in California.*** Unfortunately, the exploitation of homeowners facing foreclosure is an old problem and the Legislature has succeeded in curbing much of this unscrupulous behavior. But, in part because foreclosures are listed in public records, the most vulnerable homeowners can easily be identified and targeted by individuals offering false hopes of a way out of a desperate financial problem. To address this issue, existing law defines foreclosure fraud, creates procedures for legitimate foreclosure consultations, and prescribes punishment for those who violate those procedures. At the time of their passage, these statutes did not regulate the act of "surplus chasing," whereby individuals solicit borrowers to recover surplus foreclosure fees that they are entitled to under the law—often for an exorbitant fee.

In 2004, in an effort to curb this cottage industry, the Legislature expanded the definition of "foreclosure consultant" to include those individuals who "assist owner[s] in obtaining…the remaining proceeds from the foreclosure sale of the owner's residence." (SB 1277 (Ackerman) Chapter 177, Statutes of 2004.) It also expressly prohibited foreclosure consultants from entering into contracts with borrowers to access surplus funds.

Unfortunately, these provisions have been insufficient in stopping the practice of "surplus chasing," resulting in losses for already financially vulnerable borrowers. This bill seeks to bolster the protections in the existing law, thus better protecting vulnerable homeowners.

***What happens to surplus funds after a trustee sale?*** In California, the process for disbursing excess funds after a trustee sale of a foreclosed property is governed by state law and the terms of the deed of trust. The trustee sale is the process whereby a foreclosed property is sold to pay off a loan in default. Excess funds are any proceeds from the sale that exceed the amount owed on the loan, and these funds are distributed according to a specific process. According to existing law, the trustee must first deduct any expenses associated with the sale, including trustee fees

and costs incurred during the foreclosure process. The trustee must then also pay off the outstanding debt owed to the lender. Once these expenses are paid, any remaining funds are distributed to the parties with an interest in the property, according to their lien priority. Finally, if anything is left over, the original borrower is entitled to those funds.

Notice of the sale, the name of the borrower, and the amount due is published in a newspaper at least 20 days prior to the sale. These requirements are intended to ensure that all interested parties have an opportunity to claim their share of any excess proceeds. While this public notice increases transparency, it also provides highly accessible information about the most vulnerable homeowners. Unfortunately, the author and sponsors of this measure note that unscrupulous actors are taking this information and further preying on the vulnerable.

To address concerns that bad actors are using public notices of trustee sales to prey on vulnerable Californians, this bill places a general prohibition on *any* individual, whether or not they fall within the definition of a foreclosure consultant under Civil Code Section 2945 or not, from "soliciting, contacting or initiating communication with an owner to claim the surplus funds from a foreclosure sale of the owner's residence for 90 days after the trustee's deed has been recorded." By placing a blanket prohibition on any solicitation for 90 days, the bill provides the trustee with enough time to meet their statutory obligation to distribute funds based on priority, and then alert the borrower directly regarding their entitled-to surplus funds before a scammer can get to them. This bill helps ensure that foreclosed-on borrowers get the full amount of surplus funds to which they are entitled under the law.

***Clean-up to SB 1079 and AB 1837.*** In 2020, as one means of mitigating the trend towards increased corporate ownership of single-family homes in California, the Legislature enacted SB 1079 (Skinner) Chap. 202, Stats. 2020. SB 1079 created a process (now known in the real estate industry as the “SB 1079 process”) through which three categories of eligible bidders—prospective owner-occupants; existing tenants living in the property; and designated entities, including nonprofit affordable housing providers, community land trusts, limited-equity housing cooperatives, and public entities—could acquire single-family homes by matching or exceeding bids placed at foreclosure auctions. In 2022, SB 1079 was updated by AB 1837 (Bonta) Chap. 642, Stats. 2022, to curb fraud, address identified implementation challenges, and increase the stock of affordable housing. This bill resolves improper cross references and makes other clarifying changes the statutes as modified by those measures.

***ARGUMENTS IN SUPPORT:*** The United Trustees Association, the sponsor of this bill and a supporter of AB 1837 that sought to clarify and improve the AB 1079 process, states:

> When a borrower goes into foreclosure on their home and is subject to a note and deed of trust, a foreclosure trustee may sell the property at a trustee's sale pursuant to existing law in the civil code. AB 295 makes a variety of technical and clean-up changes in California's foreclosure laws to resolve improper cross-references and other minor changes. Specifically, this bill seeks to make several changes to the post-trustee sale process enacted by SB 1079 (Skinner, 2020) and several other foreclosure-related statutes. For example, the bill corrects the prohibition on step bids and instructions which currently applies only to eligible tenant buyers but should apply to all eligible buyers and corrects an improper cross-reference in Civil Code Section 2924h. AB 295 also clarifies the type of deed copy that trustees must submit to the Attorney General's office which was enacted by AB 1837 (Bonta) [Chapter 642, Statutes of] 2022.

AB 295 also seeks to protect those entitled to surplus funds following a trustee's sale from individuals who are attempting to take advantage of the foreclosure process. Existing law already requires a trustee to distribute all surplus funds following a trustee's sale to the borrower and anyone else who is entitled to those funds. Known as "surplus fund chasers", there are companies which seek out these borrowers and others by offering to assist in acquiring surplus funds, oftentimes at 25% to 40% of their entitled amount. AB 295 seeks to restrict these surplus fund chasers from seeking to contact a borrower and others until 90 days after the trustee's deed has been recorded. This 90-day delay will allow trustees to find the appropriate individuals entitled to these funds and distribute these funds without them having to pay these exorbitant fees. We believe this approach helps to protect the borrower and others from having their equity and surplus funds unnecessarily reduced.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

United Trustees Association (sponsor)

**Opposition**

None on file

**Analysis Prepared by**:  Nicholas Liedtke & Shiran Zohar/ JUD. / (916) 319-2334

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

**EXHIBIT 4**

**(REDFIN: $1,560,372)**



**EXHIBIT 5**

**(ZILLOW: - $1,316,200)**

Geraci Law Firm
90 Discovery
Irvine, California 92618
T: (949) 379-2600; F: (949) 379-2610

Main Document Page 46 of 50

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

90 Discovery, Irvine, CA 92618

A true and correct copy of the foregoing document entitled (*specify*): REPLY TO DEBTOR'S OPPOSITION TO SANDRA CRISTOBAL'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY OR FOR ORDER CONFIRMING THAT THE AUTOMATIC STAY DOES NOT APPLY (UNLAWFUL DETAINER).

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 07/23/2024, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

PLEASE SEE ATTACHED LIST

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 07/23/2024, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

PLEASE SEE ATTACHED LIST

☑ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 07/23/2024 | PRINCESS HAMDAG | /s/ Princess Hamdag |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

# Mailing Information for Case 2:24-bk-13887-NB

## Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **Kathy A Dockery (TR)** EFiling@LATrustee.com
- **Dana M Douglas** dmddouglas@hotmail.com, douglas.danar115703@notify.bestcase.com
- **Marina Fineman** m.fineman@geracillp.com
- **United States Trustee (LA)** ustpregion16.la.ecf@usdoj.gov

## Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.

Label Matrix for local noticing
0973-2
Case 2:24-bk-13887-NB
Central District of California
Los Angeles
Tue Jul 23 13:13:40 PDT 2024

Los Angeles Division
255 East Temple Street,
Los Angeles, CA 90012-3332

American Express National Bank
c/o Becket and Lee LLP
PO Box 3001
Malvern PA 19355-0701

Amex/American Express
PO Box 297871
Fort Lauderdale, FL 33329-7871

Argent Holdings LLC
1301 W. Hillsdale Blvd. #101
San Mateo, CA 94403-3140

CA Franchise Tax Board
ATTN: Bankruptcy Dept.
MS: A-340 PO Box 2952
Sacramento, CA 95812-2952

Credit Plus
31550 Winterplace Pkwy
Salisbury, MD 21804-1882

~~Dana M. Douglas~~
~~Attorney at Law~~
~~4712 Admiralty Way #1001~~
~~Marina del Rey. CA 90292-6905~~

David Stephens
5851 S. Garth Ave.
Los Angeles, CA 90056-1511

Dept of Education/GLELSI
2401 International
PO Box 7859
Madison, WI 53707-7859

Dept of Education/NELNET
DeptEdNelnet
PO Box 82561
Lincoln, NE 68501-2561

Designed Receivables
DSRM National Bank
7201 Canyon Dr.
Amarillo, TX 79110-4339

Deutsche Bank National Trust Co. Trustee (Se
c/o Newrez LLC
dba Shellpoint Mortgage Servicing (fka
Specialized Loan Servicing LLC)
6200 S. Quebec Street, Suite 300
Greenwood Village, Colorado 80111-4720

EMS
1550 Peachtree St. NW MD
Atlanta, GA 30309-2402

First Union National Bank
3321 Willow Lane
Macungie, PA 18062-8491

GM Financial
PO Box 1510
Cockeysville, MD 21030-7510

Green Dot Bank
840 Route 33
Mercerville, NJ 08619-4413

Green Dot Bank
840 Route 33
Trenton, NJ 08619-4413

GreenDotBank
Green Dot
PO Box 5100
Pasadena, CA 91117-0100

Internal Revenue Svc.
PO Box 7346
Philadelphia, PA 19101-7346

LVNV Funding, LLC
Resurgent Capital Services
PO Box 10587
Greenville, SC 29603-0587

(p)IQV SERVICING
PO BOX 465
DUBLIN OH 43017-0465

~~(p)LOS ANGELES COUNTY TREASURER AND TAX COLLE~~
~~ATTN BANKRUPTCY UNIT~~
~~PO BOX 54110~~
~~LOS ANGELES CA 90054-0110~~

Midland Credit Management, Inc.
PO Box 2037
Warren, MI 48090-2037

Partners Credit
6 Harris Ct., Ste B
Monterey, CA 93940-5819

Partners Credit
65 E Wacker Pl., Ste 1405
Chicago, Il 60601-7239

Sakhat Partners
Equity Wave Lending
2355 Main St., Ste 230
Irvine, CA 92614-4291

Sakhat Partners
Equity Wave Lending
2355 Main St., Ste 230
Studio City, CA 91614

Sequia Financial Svcs.
28632 Roadside Dr., Ste 110-111
Agoura Hills, CA 91301-6064

Specialized Loan Servicing
8742 Lucent Blvd., Ste 300
Highlands Ranch, CO 80129-2386

Specialized Loan Servicing
8742 Lucent Blvd., Ste 300
Littleton, CO 80129-2386

Synch/PPC
PO Box 530975
Orlando, FL 32896-0001

US Department of Education c/o Nelnet
121 S 13th St
Lincoln, NE 68508-1904

United States Trustee (LA)
915 Wilshire Blvd, Suite 1850
Los Angeles, CA 90017-3560

Dana M Douglas
11024 Balboa Blvd #431
Granada Hills, CA 91344-5007

David Stephens
5851 Garth Ave.
Los Angeles, CA 90056-1511

Kathy A Dockery (TR)
801 Figueroa Street, Suite 1850
Los Angeles, CA 90017-5569

Sandra Cristobal
14032 S Orchard Ave
Gardena, CA 90247-2752

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Loanme, Inc
1900 S State College Blvd.
Anaheim, CA 92806

Los Angeles County Tax Collector
PO Box 54110
Los Angeles, CA 90054-0110

End of Label Matrix
Mailable recipients 37
Bypassed recipients 0
Total 37

**CONTINUED SERVICE LIST**

| | |
|---|---|
| Provident Trust Group LLC FBO<br>George Hecker IRA, Et Tal<br>c/o Asset Default Management, Inc.<br>7525 Topanga Canyon Blvd.<br>Canoga Park, CA 91303 | Sakhat Partnership<br>c/o Ashwood TD Services LLC<br>231 E. Alessandro Blvd., Suite 6A-693,<br>Riverside CA 92508 |
| IndyMac Bank, F.S.B.<br>Bldg B, 901 E 104th St., Suite 400/500<br>Kansas, MO 64131 | |