# FOR PUBLICATION

**FILED & ENTERED**

**AUG 13 2024**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY gonzalez  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br>David Stephens,<br><br><br><br>Debtor. | Case No.:    2:24-bk-13887-NB<br>Chapter:    13<br><br>**OPINION THAT THE AUTOMATIC STAY DID NOT APPLY TO POSTPETITION FINALIZATION OF NON-JUDICIAL FORECLOSURE**<br><br>Hearing:<br>Date:   July 30, 2024<br>Time:  10:00 a.m.<br>Place: Courtroom 1545<br>            255 E. Temple Street<br>            Los Angeles, CA 90012<br><u>Appearances</u>:<br>Dana M. Douglas, Esq. for Debtor<br>Marina Fineman, Esq. for Purchaser |

The identity of the winning bidder at a foreclosure sale usually is known at the end of a live auction that is over in a few minutes. But sometimes, under amended California Civil Code § 2924 *et seq.*, matching or higher bids can be submitted up to several weeks later.

That is what happened here. There was a third party bidder at a live foreclosure auction, but a few weeks later a qualifying overbid was submitted by an eligible bidder,

Sandra Cristobal ("Purchaser").  Debtor David Stephens ("Debtor") filed his chapter 13 bankruptcy petition the next day, on May 17, 2024 (the "Petition Date").

Debtor argues that the foreclosure sale of his residence (the "Property") could not be completed postpetition without violating the automatic stay of § 362(a)(3).[1]  This Court disagrees.

First, § 362(a)(3) only prohibits an affirmative "act" to take possession of or exercise control over property of the bankruptcy estate.  The sale became final without any such "act": Purchaser's prepetition bid simply turned out, postpetition, to be the last and highest bid.

Second, after the sale was final the foreclosure trustee did take an affirmative act: it executed and delivered to Purchaser the Trustee's Deed Upon Sale ("Trustee's Deed").  But by then Debtor's temporary legal title had expired by its own terms, so the estate no longer had any "property" interest and § 362(a)(3) did not apply.

Third, Purchaser's postpetition act of recording the Trustee's Deed did not violate § 362(a)(3).  Not only had the bankruptcy estate's temporary title expired by that time but, alternatively, Purchaser's perfection of her interest comes within the statutory exception to the automatic stay in § 362(b)(3).

In sum, the automatic stay was not violated by any of the three foregoing events – the sale becoming final, the transfer of title to Purchaser, or Purchaser's recordation of the Trustee's Deed.  Alternatively, in case the automatic stay were to apply in some way (which it did not) it is appropriate for this Court to grant Purchaser's request for relief under § 362(d)(1) and (d)(2), including annulment of the stay.  Among other things: Debtor has not pointed to any way that he could regain any of the interests he used to have in the Property before the live auction; creditors will be paid in full out of what Purchaser has paid for the Property; Debtor will also receive a substantial distribution;

---

[1] Unless the context suggests otherwise, a "chapter" or "section" ("§") refers to the United States Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code"), a "Rule" means the Federal Rules of Bankruptcy Procedure or other federal or local rule, and other terms have the meanings provided in the Code, Rules, and the parties' filed papers.

and the harm to Purchaser if the stay were not annulled substantially exceeds any supposed harm to Debtor if it is not.

The bottom line is that Debtor filed his bankruptcy petition too late, after the live foreclosure auction and after Purchaser's qualifying overbid.  This Opinion is designated for publication because there has been relatively little judicial guidance on the interplay between the automatic stay and the recent amendments to California's non-judicial foreclosure statutes.

**1.    JURISDICTION, VENUE, AND AUTHORITY**

This Bankruptcy Court has jurisdiction to determine matters pertaining to the automatic stay, and venue is proper under 28 U.S.C. §§ 1334 and 1408.  This is a "core" proceeding in which this Bankruptcy Court has the authority to enter a final judgment or order under 28 U.S.C. § 157(b)(2)(A) and (O).  *See also Stern v. Marshall*, 564 U.S. 462 (2011).

**2.    FACTS**

There is no dispute as to the underlying facts and timeline, which are set forth in the following table:

| Date | Event |
| --- | --- |
| April 4, 2024 | Property sold at live auction for $659,000.00 to a third party who is not involved in the present dispute. |
| April 12, 2024 | Purchaser timely submits a notice of intent to overbid per the procedures in Cal. Civ. Code § 2924m(c)(4). |
| May 16, 2024 | Purchaser timely overbids by delivering a cashier's check for $661,000.00 to the foreclosing trustee (the "Purchase Price"). |
| May 17, 2024 | Debtor files his bankruptcy petition. |
| May 19 or 20, 2024[2] | No additional bids are submitted/received by the deadline(s), so Purchaser is "deemed the last and highest bidder" per Cal. Civ. Code § 2924m(c)(4)(B). |
| May 28, 2024 | Foreclosing trustee delivers executed Trustee's Deed to Purchaser. |
| May 30, 2024 | Purchaser records the Trustee's Deed. |

---

[2] The statute requires that any eligible bidder "submit" a bid "during" the 45 day period after the live auction, *i.e.*, by Sunday, May 19, 2024, but permits submission via overnight delivery or other methods that might not be "received by the trustee" until the "next business day," which was Monday, May 20, 2024.  *See* Cal. Civ. Code § 2924m(c)(4)(A)(iii).

On July 8, 2024, Purchaser filed her "Motion For Relief From The Automatic Stay Or For Order Confirming That The Automatic Stay Does Not Apply Under 11 U.S.C. § 362(l)" (the "§ 362 Motion").  Debtor filed an opposition; Purchaser filed a reply; this Court heard oral arguments; and at the conclusion of the hearing this Court orally ruled that it would grant the § 362 Motion.  This Opinion and the accompanying order implement that oral ruling.

**3.   STATUTORY AUTHORITY**

   **a.   The automatic stay**

Debtor relies on § 362(a)(3).  He does not argue that any other provision of the automatic stay applies.

Under § 362(a)(3), Debtor's filing of the petition operated "as a stay, applicable to all entities, of … any <u>act</u> to obtain possession of <u>property</u> of the estate or of property from the estate or to exercise control over property of the estate …."  (Emphasis added.)  "State law determines the property rights of the parties, and whether those rights are obtained pre- or post-petition." *In re Hager*, 651 B.R. 873, 880 (Bankr. E.D. Cal. 2023) (citing *Butner v. United States,* 440 U.S. 48 (1979)).

Supposing that the automatic stay were to apply, the statute includes an exception for "any act to <u>perfect</u>, or to maintain or continue the perfection of, an interest in property to the extent that the trustee's rights and powers are subject to such perfection under section 546(b) of this title …."  § 362(b)(3) (emphasis added).  The cross-referenced § 546(b) provides, in paragraph (1)(A), that the estate's avoiding powers "are subject to any generally applicable law that permits perfection of an interest in property to be effective against an entity that acquires rights in such property before the date of perfection …."  *See In re Hunters Run Ltd. P'ship*, 875 F.2d 1425, 1428 (9th Cir. 1989) (purpose of § 362(b)(3) is to allow "creditors with certain types of liens to avoid the potential prejudice of section 362's automatic stay by allowing for post-bankruptcy-petition perfection of these liens").

### b.   California's non-judicial foreclosure statutes

Under relatively recent amendments to California's non-judicial foreclosure statutes, certain persons – defined in the statute as "eligible bidders" – are authorized to submit bids even after completion of the live auction.  *See* Cal. Civ. Code § 2924m(3).  The statute defines various subcategories of eligible bidders, and the time at which the sale becomes final varies depending upon which subcategory describes the eligible bidder, and when the bid was submitted.[3]

An eligible bidder has fifteen days from the date of the live auction to submit either a qualifying eligible bid or a qualifying notice of intent to bid:  "A trustee's sale of property under a power of sale contained in a deed of trust or mortgage on real property containing one to four residential units pursuant to Section 2924g shall not be deemed <u>final</u> until [in applicable circumstances] … [f]ifteen days after the trustee's sale unless at least one … eligible bidder submits to the trustee … a nonbinding written notice of intent to place [a qualifying] bid."  Cal. Civ. Code § 2924m(c)(2) (emphasis added).  If an eligible bidder timely follows through on this notice by submitting a qualifying bid, then the sale becomes final "on the 45th day after the trustee's sale."  Cal. Civ. Code § 2924m(c)(4)(B).

Finality of the sale is different from actual transfer of title, as evidenced by the fact that the California statute addresses title separately from the finality of sale (albeit in parallel terms).  Under Cal. Civ. Code § 2924m(f), "[t]itle to the property shall remain

---

[3] The amendments to the statutes, enacted by Senate Bill 1079, Cal. 2019–20 Reg. Sess. (eff. Jan. 1, 2021), are sometimes known in the legal community as "Senate Bill 1079" or "SB 1079."  *See* 2020 Cal. Legis. Serv. Ch. 202 (S.B. 1079) (Westlaw).  Further amendments were made by Assembly Bill 295, Stats. 2024, Ch. 142, Sec. 5 (eff. July 18, 2024).  *See* 2024 Cal. Legis. Serv. Ch. 142 (A.B. 295) (Westlaw).  Confusingly, the statute provides that a "trustee's sale" (Cal. Civ. Code § 2924m(c)) shall not be deemed final until 45 days "after the trustee's sale" (*id.,* § 2924m(c)(4)(A)), but the identity of the purchaser can change (as in this case) so the original "sale" is different from the final "sale."  In an attempt to avoid this confusion, this Opinion refers the original sale as the "live auction" and the final sale as the "sale."  For a more comprehensive discussion of the intricate amendments to the statute (not including the corrected cross-reference added by A.B. 295), see *Hager*, 651 B.R. 873, 881–82.

with … trustor [Debtor] … until the property sale is deemed final as provided in this section" (emphasis added).

Finality of the sale is also different from perfection, as explained in *Hager,* 651 B.R. 873. California law provides that perfection is retroactive for an eligible bidder as of "the actual date of sale if the trustee's deed is recorded within 60 calendar days after the sale …." Cal. Civ. Code § 2924h(c).

**4.    DISCUSSION**

**a.    Purchaser's prepetition bid turned out to be the winning bid without any postpetition "act," so the sale became final without any violation of the automatic stay**

Under the above-quoted California foreclosure statutes, the sale to Purchaser did not become final until "the 45th day after the trustee's sale," which was after the Petition Date. Cal. Civ. Code § 2924m(c)(4)(B). According to Debtor, this means that the sale is void as a violation of § 362(a)(3).

This Court disagrees. Section § 362(a)(3) prohibits any "act" to take possession or control of property. In an analogous situation, involving retaining possession of vehicles that had been impounded prepetition, the Supreme Court interpreted § 362(a)(3) to stay only "<u>affirmative</u> acts that would disturb the status quo of estate property as of the time when the bankruptcy petition was filed." *City of Chicago, Illinois v. Fulton*, 592 U.S. 154, 158 (2021) (emphasis added). Similarly, in this case there is no affirmative postpetition act.

Purchaser's prepetition bid simply turned out postpetition to be the last and highest bid. That had the effect of making the sale final, but not by any "act" of Purchaser or anyone else. Therefore, Debtor has not shown that the automatic stay prevented the foreclosure sale to Purchaser from becoming "final" under the California foreclosure statutes.

**b.     As of the Petition Date, Debtor's remaining interest in the Property was only temporary and, after it ceased to exist by its own terms, there was no "property" for the automatic stay to protect**

Section § 362(a)(3) only prohibits acts to obtain possession of or exercise control over "property" of the bankruptcy estate. Debtor has not pointed to any property interest that the estate continued to have by the time the Trustee's Deed was executed and delivered to Purchaser.

Under California law, Debtor had only temporary title to the Property as of the Petition Date. "Title to the property shall remain with the … trustor [Debtor] … <u>until</u> the property sale is deemed final as provided in this section." Cal. Civ. Code § 2924m(f) (emphasis added). As noted above, the sale was deemed final as of the 45th day after the live auction, so Debtor's temporary title expired by its own terms as of that 45th day.

Put differently, at the conclusion of the live auction on April 4, 2024, Debtor's loss of title to the Property was already locked in place, leaving him with merely temporary title. The only uncertainty was whose name would appear on the Trustee's Deed – the highest bidder at that live auction (if there were no qualified bidders who gave notice within 15 days), or a subsequent winning bidder such as Purchaser (after 45 days).

In addition, Debtor cites no authority that whatever title he continued to possess after the live auction gave him any interest that he could still use, sell, or lease (apart from his mere occupancy of the Property pending finality of the sale). For example, he cites no authority that he could still lease out rooms to tenants after the live auction, as he apparently hoped to do if this Court had been persuaded to rule in his favor.

Nor is this Court aware of any interest that Debtor had beyond these temporary rights, even on a contingent basis. For example, Debtor's right to cure his defaults had expired five days prior to the date of the foreclosure sale. *See* Cal. Civ. Code § 2924(c)(a)(1) & (c).

In sum, up until the 45th day, Debtor had only temporary title. After that 45 day period expired, Debtor has not established that he had any cognizable interest in the Property.

True, Debtor did in fact continue to occupy the Property. But, as pointed out by the Court of Appeals for the Ninth Circuit in an analogous context, once a debtor has "no remaining legal interest in the property" the fact of "actual possession" has "no bearing" on whether that debtor has a "cognizable possessory <u>interest</u>" in the property. *In re Perl,* 811 F.3d 1120, 1128 (9th Cir. 2016) (emphasis added).

Therefore, by the time the foreclosure trustee executed and delivered the Trustee's Deed, any temporary property interest had ceased to exist. Those acts were not prohibited by the automatic stay of § 362(a)(3).

    **c.**    **Purchaser's post-petition perfection of her interest in the Property qualifies for a statutory exception under § 362(b)(3)**

Purchaser perfected her interest in the Property by recording the Trustee's Deed postpetition on May 30, 2024. But by that time the bankruptcy estate's temporary interest in the Property had expired, so § 362(a)(3) did not prevent that act, for the reasons stated above.

Alternatively, the act of recording the Trustee's Deed is excepted from the automatic stay by § 362(b)(3). The perfection analysis is explained by the Bankruptcy Appellate Panel for the Ninth Circuit (the "BAP") in a case decided under California's prior version of the foreclosure statutes, which included only a 15 day relation-back period:

> Pursuant to 11 U.S.C. § 362(b)(3), an act to perfect an interest in property does not violate the automatic stay to the extent that the trustee's rights and powers are subject to such perfection under 11 U.S.C. § 546(b). Section § 546(b) provides that a trustee's right to avoid a transfer pursuant to 11 U.S.C. §§ 544(a) or 549 is subject to any generally applicable law that permits perfection to relate back and to be effective against one who acquires rights in the property before the date of perfection. Pursuant to [Cal. Civ. Code] section 2924h(c), a foreclosure sale purchaser who records its deed within [the relation-back period, which in that case was up

>to fifteen days after] the foreclosure sale[,] will prevail over someone who purchases the real property from the debtor after the foreclosure sale even if that person records its deed first. Therefore, the recordation of a foreclosure sale deed within [the California relation-back period] does not violate the automatic stay and is not avoidable pursuant to 11 U.S.C. §§ 544 or 549. [*In re Bebensee-Wong*, 248 B.R. 820, 822 (9th Cir. BAP 2000) (quoting *In re Stork*, 212 B.R. 970, 971 (Bankr. N.D. Cal. 1997).]

There is no reason why the BAP's reasoning would not apply equally after the California relation-back period was expanded to 60 days for eligible bidders. *See In re Ford*, No. 2:22-BK-13649-WB, 2022 WL 17742285, at *3 (Bankr. C.D. Cal. Dec. 15, 2022) (under *Bebensee-Wong*, postpetition recordation of a trustee's deed did not violate the automatic stay).

### d. Alternatively, even if the automatic stay were to apply, relief from the stay is appropriate under § 362(d)(1) and (d)(2)

Alternatively, if this Court were to suppose for the sake of discussion that Debtor could point to some "act" and some "property" interest to which § 362(a)(3) applied (which he has not done), it would be appropriate to grant Purchaser's request for relief from the automatic stay, including annulment. Purchaser makes a number of factual allegations supporting such relief. Debtor does not dispute her allegations (only her conclusions).

Purchaser asserts that roughly $461,000.00 of the Purchase Price has already been used by the foreclosure trustee to pay off the foreclosing junior lienholder, and it would be expensive and difficult for her to attempt to recover those funds. The balance of the Purchase Price, allegedly amounting to approximately $200,000.00, will be sufficient to pay all remaining unsecured claims against the property in full, and also distribute roughly $187,000.00 to Debtor. Purchaser asserts that Debtor's proposed chapter 13 plan is infeasible because, among other things, his bankruptcy schedules show a negative net monthly income (-$4,123.45, before any payments to creditors). Purchaser will be unable to refinance and pay off the senior lienholder, or reach any agreement with the senior lienholder, unless and until her § 362 Motion is granted. In addition, she and her parents have extended themselves financially in reliance on her

rights as an eligible bidder under California law, and they will be greatly prejudiced if her § 362 Motion is not granted. *See* § 362 Motion pp. pp. 10:18-11:7, 16:12-22:5. On this last point she alleges:

> Coming up with the entire Purchase Price was not easy for [Purchaser], who earns less than approximately $150,000 annually. On May 13, 2024, [Purchaser] obtained a home equity line of credit on her parents' house. The loan is in her name but secured by their house. [Purchaser] drew down $433,000 on the credit line, which she used to pay a third of the Purchase Price. In order to pay the $228,000 balance, [Purchaser] sold all of her personal stocks, and some of her retirement stocks, which she had been saving over the last several years in order to purchase a home. [§ 362 Motion, pp. 9:20-10:4 (footnote omitted).]

The legal standards are well established. Under § 362(d)(1) this Court "shall" grant relief from the automatic stay, "such as by terminating [or] annulling … such stay … for cause, including the lack of adequate protection of [Purchaser's] interest" in the Property.

Under § 362(d)(2) this Court "shall" grant relief if (A) Debtor does not have an equity in the Property and (B) the property is not necessary to an "effective" reorganization. For example, Debtor would have no equity in the Property even if (contrary to this Court's analysis above) he retained bare legal title after 45 days. In any event, Debtor has not shown how he would have any equity after the live auction.

As for an "effective" reorganization, that means a "reasonable possibility of a successful reorganization within a reasonable time." *In re Timbers of Inwood Forest Assoc's, Ltd.,* 484 U.S. 365, 375-76 (1988) (citation and quotation marks omitted). Debtor has more leeway at this early stage of this bankruptcy case than he would later on, but that leeway is not unlimited: he must offer sufficient evidence "to indicate that a successful reorganization within a reasonable time is plausible." *In re Sun Valley Newspapers,* 171 B.R. 71, 75-76 (9th Cir. BAP 1994) (citation and quotation marks omitted).

The party requesting relief from the automatic stay "has the burden of proof on the issue of the debtor's equity in property." § 362(g).  The party opposing such relief (Debtor) "has the burden of proof on all other issues." *Id.*

Bankruptcy courts have "wide latitude" in crafting relief from the automatic stay, including annulment (*In re Schwartz*, 954 F.2d 569, 572 (9th Cir. 1992)), and must "balance[] the equities" to determine whether annulment is justified.  *In re Nat'l Env't Waste Corp.*, 129 F.3d 1052, 1055 (9th Cir. 1997).  *See generally In re Fjeldsted,* 293 B.R. 12 (9th Cir. BAP 2003); *and see also In re Merriman,* 616 B.R. 381 (9th Cir. BAP 2020) (*Fjeldsted* is a guide, not mechanical checklist).

In determining whether to annul the stay, bankruptcy courts should consider all of the facts and circumstances, including but not limited to "(1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor." *Nat'l Envtl. Waste Corp.*, 129 F.3d 1052, at 1055.  Other considerations include the twelve that are listed in *Fjeldsted*, which are non-exclusive:

1. Number of filings;
2. Whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors;
3. A weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including <u>whether harm exists to a bona fide purchaser</u>;
4. The Debtor's overall good faith (totality of circumstances test);
5. Whether creditors knew of [the] stay but nonetheless took action, thus compounding the problem;
6. Whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules;
7. The relative ease of <u>restoring parties to the *status quo ante*</u>;
8. The <u>costs of annulment to debtors and creditors</u>;
9. How quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct;
10. Whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief;
11. Whether annulment of the stay will cause <u>irreparable injury to the debtor</u>;
12. Whether stay relief will promote judicial economy or other efficiencies.  [*In re Fjeldsted*, 293 B.R. 12, at 25 (emphasis added).]

In this case neither Debtor nor Purchaser argues that the other did anything wrong, inequitable, or untimely, except that Purchaser complains about Debtor having waited to file his bankruptcy petition until after the live auction and her overbid. The most significant *Fjeldsted* considerations are emphasized above: there would be substantial prejudice to Purchaser if the automatic stay were to apply and if relief were not made retroactive; this Court is unable to restore the parties to the *status quo* as it existed prior to the live auction; creditors can be paid in full out of net proceeds from the Purchase Price; Debtor will also receive a substantial distribution; and Debtor has not shown substantial harm. True, Debtor will suffer harm in that his loss of the Property will have been recognized as final and complete if the § 362 Motion is granted; but Debtor has not pointed to any way in which he could unwind his prepetition loss of the Property at the live auction, nor has he shown how in practical terms he could use, sell, or lease the Property at this late stage.

In addition, Purchaser has made a *prima facie* showing that her interest in the Property is not adequately protected, and Debtor has not adequately rebutted that showing. Debtor's hope, unsupported by data and projections, is that he could offset his negative monthly income by renting out rooms (or possibly the entire Property). That is not sufficient to show that his chapter 13 plan will be feasible such that he could fully compensate Purchaser, or more generally that Purchaser's interest is adequately protected. *See* §§ 361, 362(d)(1), 363(e).

For the foregoing reasons, Purchaser has shown sufficient cause for relief from the automatic stay in the event that the stay were to apply in any respect. Such relief includes both termination of the stay and annulment.

**5.    CONCLUSION**

Purchaser is correct that Debtor has not established any violation of § 362(a)(3). Alternatively, it is appropriate to grant Purchaser's request for relief from the automatic stay, including annulment.

This Court will issue a separate order granting Purchaser's § 362 Motion. That order will be effective immediately, pursuant to this Court's discretion under Rule 4001(a)(3).

###

Date: August 13, 2024

Neil W. Bason
United States Bankruptcy Judge